[L. A. No. 4582. Department Two.—January 28, 1919.]

## LEON BLOOMBERG, Respondent, v. JULIUS LAVENTHAL, Appellant.

ASSAULT AND BATTERY—DAMAGES—VERDICT NOT EXCESSIVE.—In this action for damages alleged to have been caused by a blow struck upon the side of plaintiff's head by defendant's fist, it is held that the evidence was sufficient to support the verdict for five thousand dollars.

ID.—EVIDENCE—STATEMENTS OF PLAINTIFF.—In such action statements made by plaintiff to a witness to the effect that the former had pains

in the head and could not sleep were admissible, being complaints regarding existing discomforts and not narratives of past miseries.

ID.—FORM OF VERDICT — SEGREGATION OF DAMAGES — ABSENCE OF REQUEST.—In such action the defendant may not complain that the jury was not given a form of verdict which would segregate the amounts which might be awarded for compensation and for punitive damages, where no request was made for such a form.

ID.—EXEMPLARY DAMAGES—INSTRUCTION.—In such action there is no force in defendant's contention that the court erred in giving any instruction relating to exemplary damages because the assault was one provoked by plaintiff and made in the sudden heat of passion, where the description of the occurrence in defendant's place of business, as given by plaintiff, showed a deliberate seeking of a quarrel by defendant, followed by threats of personal violence soon succeeded by the striking of a blow, and the defendant did not request the giving of any instruction which would eliminate the matter of exemplary damages, but, on the contrary, offered an instruction, which was given, that left to the jury the duty of determining whether or not defendant was actuated by malice toward plaintiff, and informing the jurors that exemplary damages might not be awarded if defendant committed the battery in a sudden heat of passion and not maliciously.

ID.—CATARRHAL DISEASE OF HEAD—EFFECT UPON DAMAGES—INSTRUCTION.—In such action the refusal to give an instruction to the effect that if the jurors found that plaintiff was suffering from a catarrhal disease of the head they could only award damages for conditions which were the direct result of the battery, and that suffering and injury should be distinguished from the catarrhal affliction, was proper, in the absence of either pleading or proof relating to catarrhal affliction.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Merle J. Rogers, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

T. J. K. MacGowen, Ernest C. Griffith, and Denis & Loewenthal, for Appellant.

Meserve & Meserve and J. D. Taggart, for Respondent.

MELVIN, J.—Plaintiff sued to recover damages alleged to have been caused by a blow struck upon the side of his head by defendant's fist. A verdict was given against defendant

in the sum of five thousand dollars, and judgment was entered accordingly. From said judgment and from an order denying his motion for a new trial defendant appeals.

The first contention made by defendant's counsel in their brief is that the verdict was grossly excessive, and that it was not supported by the evidence. It is true that there was a decided conflict in the testimony offered by plaintiff and that on behalf of the defendant, but if the jurors believed plaintiff and his witnesses there was ample support for the conclusions reached by the jury regarding both the fact and the seriousness of the injury.

The essential circumstances developed by the testimony on the part of plaintiff, and the witnesses called in his behalf, were that Mr. Bloomberg was a clerk in the employ of Mr. Laventhal in the latter's store; that they had a difference regarding some merchandise which a customer returned pursuant to an arrangement with Bloomberg that he might do so if dissatisfied with the goods; that on January 26, 1912, the employer said to the clerk: "You are pretty low"; that this evoked a retort to the effect that Laventhal had collected and kept four dollars witness' fees belonging to Bloomberg; that the employer then exclaimed: "If you know what is good for your eyes and face you had better keep your mouth closed"; that, apprehending an attack, plaintiff tried to get away, exclaiming: "If you strike me I will have you arrested"; but that before he could turn around defendant struck him on the temple "with his full force, full weight." Plaintiff testified that after the blow he was in a dazed condition, but that he found his way in some manner to the office of a friend, Mr. Hirsch. In the days and months following, according to his testimony, plaintiff suffered great pain, loss of memory, insomnia and other physical discomforts, whereas he had always been in perfect health prior to the assault.

Mr. Hirsch corroborated plaintiff regarding the fact of the latter's visit to his office. At that time Mr. Bloomberg seemed to the witness to be irrational, and Mr. Hirsch took plaintiff home. His family physician, Dr. Quint (who was also a neighbor), was called in and, as he testified at the trial, he found his patient suffering from concussion of the brain, with quite a large welt or bump on the left side of the head, just above the temple. He complained of headache. His eyes were twitching; he talked irrationally, and he seemed bewild-

ered.   The patient was put to bed, was given a dose of bromide and had an ice-pack put upon his head.   About 4 o'clock on the following morning he appeared at Dr. Quint's home. He was partially clad and talked and acted in a bewildered manner.   Later in the day he was taken to a hospital, where he remained about a week, when he was sent home because he had become irritable and hard to manage.   Afterward he became melancholy, depressed, and was easily discouraged, was more nervous than he had been before the injury, and was troubled with an apparently involuntary "batting" or blinking of the eyes.   About two years after the assault he suffered a relapse.   Dr. Quint also testified that the welt on the side of Mr. Bloomberg's head could have been produced by a blow from a fist.

Dr. Ross Moore, a specialist to whom Dr. Quint sent Mr. Bloomberg, testified that the patient exhibited symptoms due to concussion of the brain.   The confused condition in which the doctor found Mr. Bloomberg continued up to the period of the last examination before the trial, which was more than two years after the alleged assault.   Other facts and circumstances which we need not be at pains to describe in detail were brought out by the testimony of the plaintiff's witnesses. The showing made in plaintiff's behalf was amply sufficient to support the verdict and justify the amount of the award.   It is true that defendant, under oath, stoutly protested that he had struck no blow, and he even denied any controversy with the clerk, but upon the latter subject he was contradicted by his own witness.

Appellant's counsel assert that prejudicial error was committed by the court in allowing witness Hirsch to relate statements which he said had been made to him by plaintiff to the effect that the latter had pains in the head and that he could not sleep.   It appears from the record that these were complaints regarding, and were the usual concomitants of, existing discomforts, and not narratives of past miseries.   Such statements may be properly admitted in evidence.   (*Lange* v. *Schoettler*, 115 Cal. 388, [47 Pac. 139] ; *Green* v. *Pacific Lumber Co.*, 130 Cal. 435, [62 Pac. 747] ; *Evarts* v. *Santa Barbara Ry. Co.*, 3 Cal. App. 712, [86 Pac. 830].)

It is true that after describing the appearance of Mr. Bloomberg when he visited Mr. Hirsch's office, and saying that "his eyes were starey and he was very much disturbed,"

Mr. Hirsch volunteered the statement: "So I asked him what happened, and he said Mr. Laventhal had struck him." Instantly the court admonished the witness: "Refrain from stating what he said to you." No motion was made by defendant to strike out the improper testimony, perhaps because counsel thought, as we do, that the court's prompt admonition removed any bad effect which this hearsay testimony, volunteered by the witness, may have had upon the jury.

It is contended that the testimony of witnesses Hirsch and Riva Bloomberg that plaintiff appeared at times "irrational," related to plaintiff's soundness of mind itself and not to any outward manifestation or observed facts; but an examination of the record (including the rulings of the court and the discussion in which the court declared that a witness may testify whether a person *acted* rationally or irrationally), convinces us that witnesses were describing appearances, and not seeking to speak regarding the sanity or insanity of Mr. Bloomberg. In other words, this testimony was within the rule declared in such cases as *People* v. *Manoogian,* 141 Cal. 592, [75 Pac. 177].

Appellant's counsel complain because the court did not give the jury a form of verdict which would segregate the amounts, if any, which might be awarded respectively for compensation and for punitive damages. The conclusive answer to this contention by respondent's counsel is that no request was made for a form of verdict suitable for such segregation and that, therefore, appellant may not justly complain. This position is fully sustained by *Foley* v. *Martin,* 142 Cal. 256, [100 Am. St. Rep. 123, 71 Pac. 165, 75 Pac. 842], and by *Murphy* v. *Stelling,* 8 Cal. App. 702, [97 Pac. 672].

There is no force in appellant's contention that the court erred in giving any instruction relating to exemplary damages because the assault was one provoked by plaintiff and made in the sudden heat of passion. The description of the occurrence in defendant's place of business, as given by plaintiff, showed a deliberate seeking of a quarrel by Mr. Laventhal, followed by threats of personal violence soon succeeded by the striking of a blow. This, if believed by the jury, would support a conclusion that actual malice existed. It is a fact, also, that defendant did not request the giving of any instruction which would eliminate the matter of exemplary damages. On the contrary, he offered an instruction, which was given, that

left to the jury the duty of determining whether or not defendant was actuated by malice toward plaintiff, and informing the jurors that exemplary damages might not be awarded if defendant committed the battery "in a sudden heat of passion and not maliciously."

The court properly refused to give an instruction to the effect that if the jurors found that plaintiff was suffering from a catarrhal disease of the head they could only award damages for conditions which were the direct result of the battery, and that suffering and injury should be distinguished from the catarrhal affliction. The jury was elsewhere instructed that damages could only be given for injuries which were the proximate result of the battery, if any were proven. There was neither pleading nor proof justifying the giving of the part of the instruction relating to a catarrhal affliction as a producing cause of any of the described conditions of plaintiff's health after the striking of the blow by defendant.

Other instructions were offered by defendant and refused, but the material matters contained in them were given to the jury, substantially, in other parts of the very full and fair charge. We see no necessity for reviewing these proposed instructions in detail.

Judgment and order affirmed.

Wilbur, J., and Lennon, J., concurred.

Hearing in Bank denied.

All the Justices concurred.