[Civ. No. 657. Fourth Appellate District.—January 18, 1933.]

FLORA A. MUZZY, Respondent, v. THE SUPREME LODGE OF THE FRATERNAL BROTHERHOOD (a Fraternal Benefit Society), Appellant.

Michael F. Shannon, Thomas A. Wood and Robert H. Dunlap for Appellant.

Leland S. Davidson and Fred A. Wilson for Respondent.

BARNARD, P. J.—The plaintiff, as beneficiary, brought this action to recover on a policy of accident insurance issued to her son Harry Gordon. The record shows that the insured was employed in a packing-house; that on August 15, 1930, while assisting another workman in pushing a heavy truck along a track, he slipped and fell, striking an iron support to the track; that shortly thereafter it was discovered he had a hernia; that on October 14, 1930, an operation was performed for the purpose of repairing the hernia; and that on October 21, 1930, the insured died, death having resulted from an embolism occasioned by the operation. After a trial without a jury, in which it was stipulated that the only issue involved was the cause of

death, judgment was entered in favor of the plaintiff, from which this appeal has been taken.

The policy contained the following provision: "First: In the event of the death of the member solely from accidental causes and by external violence happening without the concurrence or will of the person injured, the death occurring within ninety days from the date of the accident . . . the Society agrees to pay to Flora Muzzy . . . the sum of Fifteen hundred dollars, upon the required proof of death and upon the surrender of this certificate."

Among other things, the court found as follows: "The court hereby finds that the said Harry E. Gordon died solely from accidental causes, and by external violence happening without the concurrence or will of the said Harry E. Gordon, within the meaning of and as provided by the beneficiary certificate referred to in said complaint and in said answer."

The main contention here made is that this finding is not supported by the evidence. Appellant first points out the distinction made by our courts between a policy covering accidental death and one covering only death arising from accidental means, contending that this is a case of the latter class, relying on such cases as *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462 [156 Pac. 1029, L. R. A. 1916E, 1096], *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406 [209 Pac. 26, 28, 26 A. L. R. 116], and *Harloe* v. *California State Life Ins. Co.*, 206 Cal. 141 [273 Pac. 560]. The general rule is thus quoted in *Ogilvie* v. *Aetna Life Ins. Co.*, *supra:* " 'Where the death is the result of some act, but was not designed and not anticipated by the deceased, though it be in consequence of some act voluntarily done by him, it is accidental death. Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means.' "

In *Rock* v. *Travelers' Ins. Co.*, *supra*, the following quotation from another case is approved. " ' . . . that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but that if, in the act which precedes the injury, something unforeseen,

unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means.'"

Assuming, as contended for by appellant, that the policy here in question covered only death arising from accidental means, we think the slipping and falling which preceded the injury was such an unforeseen, unexpected and unusual occurrence as would bring the incident within the terms of the policy, and constitute an injury resulting through accidental means.

Aside from the question of interpretation and construction of the language used, the appellant contends that this finding is not supported by the evidence in three respects. It is first contended that the evidence is insufficient to show the existence of accidental causes and external violence in that the only eye-witness did not see exactly what happened. This is based upon the testimony of the workman who was assisting in pushing the truck who, after having testified as to the deceased's slipping and falling and that the side of the body came in contact with an iron projection on the rail, in answer to a question as to whether he had seen that, replied: "Well, I would judge that by his holding his body; his groin, that is what it was." In other portions of his testimony this witness stated that the deceased was pushing very hard on the truck, which operation necessitated his stooping very low; that as he was pushing the car his foot slipped and caused him to fall; that he fell onto the track; that he struck an iron support that extended out from the rail three or four inches; and that immediately afterward he took a leaning position with his hand on his groin with a look of pain on his face and said: "That hurt me." Again, this witness testified that when the deceased fell he struck this iron projection, that he fell against the square corner thereof, that he fell flat "except catching on this side", and that the lower portion of his body was flat on the floor except for a part being supported on this four-inch high projection. Not only was the trial judge justified in believing any portion thereof, but in its entirety this testimony, especially when taken in connection with other evidence in the case, justified the inference that the deceased, in falling, struck the projecting iron at the point on his body where the

external marks and the hernia were later discovered, and is sufficient to sustain the finding so far as proof of the happening of the accident is concerned.

It is next contended that the finding is unsupported because the evidence in fact shows that the deceased was suffering from a pre-existing hernia without which no operation would have been needed. In support of this appellant relies upon the testimony of a physician testifying in its favor, given in answer to a hypothetical question, to the effect that such a fall could not have caused the hernia in question, and also upon the report of one of the referees of the Industrial Accident Commission, which was introduced in evidence, in which the referee found that the deceased sustained an injury "consisting of an aggravation of a preexisting hernial condition for which an operation was furnished". If it could be assumed that this report was properly admitted and is to be considered as evidence, the two matters relied on are only a part of the evidence appearing in the record upon this point. There is other evidence to the effect that prior to this accident the deceased was always in good health; that his employment required that he engage in heavy lifting, shoving and hard manual labor; that he had never taken time off and had never complained of injury or pain; that this injury caused the first interruption of his work; that he was strong and vigorous and stronger than the average man; that after the injury his brother, with whom he slept, examined his body and found on his groin a swelling about three inches long and about one inch wide; and that although he had seen his body many times before he had never seen such a swelling prior to the accident. The physician to whom he was sent by his employer and who performed the operation, testified that he examined him and found on one groin a swelling which was tender and that he ascertained that he had a hernia; that this hernia protruded outwardly; that this was a traumatic hernia; that in his opinion it was not a pre-existing hernia; that he advised an operation and operated; and that the patient "died following the repair of a hernia of less than sixty days' duration. Death was due to embolism, which would not have occurred had it not been for his injury". He also testified that this hernia

was "a traumatic injury, or blow". He also testified that a number of things connected with his physical examination of the patient convinced him that the hernia was of very recent origin, among which were the facts that there was no thickening of the walls present and no adherent matter; also stating that "a hernia of long standing presents a different picture". He further testified that "I didn't think he ought to return to work", that "he was not in condition to do the work he formerly had done", and that it was "because of this incapacity" that he advised the operation. At best, no more appears than a conflict in the evidence, and the finding is supported in the respect mentioned.

A third ground of insufficiency of the evidence is said to be that it does not appear that the operation was necessary to save the life of the deceased; it being also urged in this connection that the fact that the deceased consented to the operation shows that the death did not occur without the concurrence or will of the person injured. The physician who performed the operation testified that in his opinion the operation was necessary; that such an operation is the only recognized treatment of hernia to effect a cure; that if the deceased had not consented to the operation the hernia would have incapacitated him; and that while an embolism of the character existing in this case is one of the hazards of any operation, it is one that happens very infrequently and one that is not anticipated or expected. In the respect under consideration we think this evidence sufficiently supports the finding complained of. The deceased was a strong, healthy man of forty-six years of age, and the words "without the concurrence or will of the person injured" used in the policy must be held to refer to the external violence referred to immediately prior thereto, and not to the concurrence of an injured person in consenting to an operation which is reasonably necessary either to save his life or to enable him to earn a subsistence. In all of the respects in which it is attacked, we think the finding is supported by the evidence.

The contention is made that the death here in question did not result from "accidental causes" as that phrase is defined in the by-laws of the defendant society, which by-laws are made a part of the insurance contract. In this

regard we are referred to section 173 of the by-laws, which purports to define an "accident", including a provision that the injured party shall be continuously and wholly disabled from the date of the accident. Since there is evidence that the deceased did some work on a few days after the accident here in question, it is contended that this by-law prevents any recovery on the part of the respondent. While section 173 purports to define an accident, it in no way defines the phrase "accidental causes". The reference therein to continuous and total disability contains no provision as to the length of the same, and that portion of the section is entirely meaningless except as the same is connected up with something else. It is perfectly apparent from the context that this relates to, and in fact it is carried over to and included in, another section of the policy providing for the payment to the member himself of weekly benefits for disabilities which do not result in death. Not only does this fully appear from the context in the by-laws, and from the certificate itself, but the purported definition in section 173 contains the limitation "unless otherwise defined in the certificate", and the paragraph in the certificate covering the matter of death resulting from "accidental causes" is full and complete and specifically sets forth the exact requirements and conditions for the payment of such death claim.

The claim is further made that an injury of this sort is specifically exempted under the policy by a part of section 177 of the by-laws reading: "Neither shall any payments of benefits be made to a member for strain, from any cause, or for any disability as a result of overlifting." We are then asked to take judicial notice of the alleged fact that the most common cause of hernia, "in the opinion of laymen", is strain. In any event, we could not assume, under the facts of this case, that this clause controls where such an injury results not from a strain but from a blow received in a fall, resulting in an actual maladjustment rather than a mere tension or soreness. However, it fully appears from this section that it relates to the payments of disability benefits to members themselves and has no relation to death benefits.

■ The final contention is that the court erred in admitting certain testimony objected to as being hearsay and self-serving. The workman who was with the deceased at the time of the accident testified that the deceased immediately thereafter said: "That hurt me", and placed his hand on his groin, and also that the deceased complained of suffering a few days later. The brother of the deceased testified that the deceased showed him where "it was hurting him", and the sister-in-law testified that the deceased talked about his pain and suffering. None of these statements were narratives of past conditions and they contain no attempt to show what caused the pain or suffering. They were properly admissible and material upon the issue of whether or not there had been a pre-existing hernia. (*Lange* v. *Schoettler*, 115 Cal. 388 [47 Pac. 139]; *Green* v. *Pacific Lumber Co.*, 130 Cal. 435 [62 Pac. 747]; *Bloomberg* v. *Laventhal*, 179 Cal. 616 [178 Pac. 496].) In any event, they cannot be held sufficiently prejudicial to require a reversal. ■ Objection is also made that the physician who performed the operation based his opinion as to the cause of the injury upon the personal history given by the deceased. This witness, on being asked upon what he based his conclusion that the hernia was of less than sixty days' duration, replied that he based it upon the man's personal history, his statement to him of the accident and how it occurred, together with the physical findings. He then testified in detail as to physical conditions in the patient showing that the hernia had not been of long standing. No reversible error appears in this testimony. (*Sherwood* v. *Thomas*, 124 Cal. App. 450 [12 Pac. (2d) 676]; *Davis* v. *Renton*, 113 Cal. App. 561 [298 Pac. 834].)

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.