[Civ. No. 1001.   Fourth Appellate District.—February 28, 1933.]

JOSEPH N. McFATE, Jr., Appellant, v. H. LEW ZUCK-ERMAN et al., Respondents.

W. I. Gilbert and Troy Pace for Appellant.

S. W. Newman and P. B. D'Orr for Respondents.

JENNINGS, J.—This is an appeal by the plaintiff from a judgment in his favor in the amount of $25,000. The sole ground of the appeal is inadequacy of damages.

Plaintiff instituted this action to recover from defendants the sum of $148,880.55 damages alleged to have been suffered by him as the result of certain false and fraudulent representations made to him by defendants Zuckerman and Gordon whereby he was induced to exchange ranch property at Paso Robles, California, for an apartment house in the city of Los Angeles owned by defendant Zuckerman. The false representations upon which it is alleged that plaintiff relied and which induced him to make the exchange related to the value of the apartment house and to the income derived therefrom through rentals of apartments. In addition to damages plaintiff also sought equitable relief through the cancellation of a certain note and mortgage executed by defendant Zuckerman and his wife in favor of defendant Merchants National Trust and Savings Bank and a second note and deed of trust executed by plaintiff and his wife in

favor of defendant Zuckerman. The issue of damages was tried before a jury which returned a verdict in plaintiff's favor in the amount of $25,000. Thereafter the court made findings of fact and therefrom drew its conclusions of law and rendered judgment permitting recovery of the amount specified by the verdict which was ordered to be applied upon the note executed by plaintiff in favor of defendant Zuckerman and denying to plaintiff the equitable relief of cancellation demanded by him in his complaint.

The record herein which is presented by means of a bill of exceptions shows that in the month of November, 1926, Joseph N. McFate, Sr., plaintiff's father, read an advertisement in the "Los Angeles Times" and that he thereupon entered into the negotiations which finally resulted in the exchange of properties. It was stipulated during the trial of the action that during these negotiations plaintiff's father acted as agent for plaintiff. The advertisement was in the following language: "Business Property. Will trade an apt. house down town between 8th and 9th for a clear ranch or lot. Income over $22,000 a year. Mtg. $125,000 7%. Lot worth $180.000. Ask Gordon. Ritz Hotel." J. N. McFate, Sr., thereupon addressed a letter to Gordon, Ritz Hotel, giving a brief description of the ranch property and calling attention to the advertisement regarding the apartment house, a copy of which was attached to the letter. An interchange of correspondence between J. N. McFate, Sr., and Gordon then ensued and on December 8, 1926, Gordon addressed to J. N. McFate, Sr., a letter, the pertinent part of which was in the following language: "The apt. house is not leased. We have a manager and we pay him 75 a month. The tax is 2000 a year. The furniture is clear, most of the furniture is new, we changed the entire inside. The lot 45 x 158 to 25 foot alley. We claim the lot is worth 4500 (per) foot. The building is 20 yrs. old, frame, and the front is brick 3 storys. It has 77 rooms and 38 renters. The income varies from 1700 to 1850 a month. The first mortgage is Hellman Bank for 100000 at 7% and the second is at 7% 25000 (thousand) for 5 years payable 250 a month. The first is always for one year as the Hellman Bank cant make a loan for longer than one year—but we renew it every year. We are renewing there now for the same amount." On December 28, 1926, J. N. McFate,

Sr., went to Los Angeles and met defendant S. E. Gordon, agent for Zuckerman, who showed him the apartment house, and represented to him that the property was mortgaged for $100,000, that it had been so mortgaged for several years, that the bank which had made the loan had carried it during this period as a permanent investment but because of legal regulations pertaining to banks the loan had to be renewed from year to year and that it had been so renewed during the month of December. Thereupon, J. N. McFate, Sr., made an offer in writing to exchange the ranch property for the apartment house subject to a first mortgage of $100,000 in favor of the Hellman Bank of Los Angeles and subject also to a deed of trust for $25,000 to be executed by plaintiff in favor of defendant Zuckerman. Defendant Zuckerman made a visit to plaintiff's ranch at Paso Robles on December 29, 1926, at which time he expressed himself as being well pleased with the ranch but stated that a property having sufficient value to carry a bank loan of $100,000 was good property and that the ranch property would not carry such a loan. During the early part of February, 1927, S. E. Gordon went to Paso Robles and brought J. N. McFate, Sr., to Los Angeles. At this time Gordon informed McFate that Zuckerman would not consider making the exchange on the basis of McFate executing a deed of trust of the apartment house in the amount of $25,000, but that he would exchange if McFate would execute a deed of trust of the apartment house to secure payment of the sum of $35,000. J. N. McFate, Sr., assented to this and signed a second written offer of exchange in which he agreed to execute a deed of trust of the apartment house to secure the sum of $35,000 payable in five years at the rate of $100 per month plus interest at the rate of seven per cent. This offer was accepted and the parties entered into escrow at the Merchants National Trust and Savings Bank in Los Angeles for the purpose of concluding the exchange.

J. N. McFate, Sr., testified that while the properties were in escrow pending completion of the exchange agreement, he made no effort to discover from the public records whether there was a first mortgage of $100,000 against the apartment house but that he did go to a Mr. Savier in the Bank of Italy for the purpose of having an appraisal made of the apartment house and that Mr. Savier told him that

if the Hellman bank was carrying a loan of $100,000 on the property it was worth $250,000 and that he could save an appraisal charge of $150 by accepting the figure of $250,000 as a basis of valuation.

The evidence produced during the trial showed that there was not an existing loan of $100,000 secured by a first mortgage of the apartment house. It also showed that during the latter part of the month of January, 1927, defendant H. L. Zuckerman went to the Merchants National Trust and Savings Bank and applied for a loan of $100,000 on the apartment house, that the bank had the property appraised, that the appraisal showed that the apartment house had a value of $132,000 at that time, that the bank informed Zuckerman it could not make a loan of $100,000 but that in view of his being a customer of long standing it would make a loan of $75,000 on the security of the apartment house, that Zuckerman stated that there was then pending an agreement for the exchange of the property which contemplated the existence of a mortgage against it to secure a loan of $100,000 and the execution of a trust deed to secure payment of an additional sum of $35,000, that the officer of the bank with whom Zuckerman was negotiating then advised him that it would be agreeable to the bank for Zuckerman to execute a mortgage purporting to secure a loan of $100,000 and that the bank would advance the sum of $75,000 upon such mortgage.

From the above narrated facts it clearly appears that there was a misrepresentation by defendant Zuckerman and his agent, Gordon, first, of the fact that there was, at the time the negotiations were begun, an existing, outstanding mortgage against the apartment house securing a loan previously made of $100,000 and, second, of the fact that there was ever a mortgage securing such a loan. A mortgage which purported to secure a loan of this amount was indeed executed by Zuckerman but, in reality, the loan which was secured thereby was a loan of $75,000.

Plaintiff concedes that the correct rule for the measurement of damages in a case of this character permits an award to the person defrauded of an amount which consists of the difference between the actual value of the property and the value which it would have had if the false representation as to its value had been true. (*Hines* v. *Brode,* 168

Cal. 507 [143 Pac. 729].) It is urged that the representation that there was a mortgage against the property of $100,000 amounted to a representation that the property had a value of $250,000. This is said to be established by the undisputed testimony of the witness, J. N. McFate, Sr., that Mr. Savier, manager of the real estate department of the Bank of Italy, informed him that, if the Hellman Bank was carrying a loan of $100,000 on the property it had a value of $250,000. There was, however, no showing of any connection between the Bank of Italy or the manager of its real estate department and the defendants Zuckerman and Gordon. The statement of Savier may not, therefore, be considered as a representation by defendants that the value of the apartment house was $250,000. At best the statement amounted to a mere opinion of the individual who made it, based on the information that a certain bank had loaned a specified amount on the security of the apartment house. Plaintiff appears to assume that this testimony established the existence of a fixed, constant relationship between market value of property, and bank loans and that the latter invariably equals forty per cent of the former. The existence of so constant and definite a relationship is contradicted by the testimony of plaintiff's witness, C. R. Bell, that the Merchants National Trust and Savings Bank appraised the apartment house as having a value of $132,000 and proceeded to make a loan upon it of $75,000, or approximately fifty-seven per cent of its appraised value.

This latter evidence was likewise evidence which the jury was entitled to consider in arriving at a determination of what value the apartment house would have had if the representation respecting the existence of a valid loan of $100,000 had been true. In this event, using the same percentage as a factor in the calculation, it appears that to warrant a loan of $100,000, the value of the apartment house would have had to amount to approximately $176,000.

Furthermore, there is some evidence in the record which points rather strongly to a valuation of approximately the last-mentioned figure for the apartment house if the representation of an existing mortgage of $100,000 had been true. The advertisement in the "Los Angeles Times" contained the statement "Lot worth $180,000." In the letter of December 8, 1926, addressed by defendant Gordon to J. N.

McFate, Sr., the following statement is made: "We claim the lot is worth 4500 (per) foot." In this letter the information was also conveyed that the building was a three-story frame building with a brick front and that it was then twenty years old. Although no representation was made, either in the advertisement or in the letter, as to the value of the apartment house itself apart from the lot, the jury may well have concluded that a twenty year old frame building would have little if any value and that the bald statement in the advertisement that the lot was worth $180,000 amounted to an outright representation of the value of the property on which plaintiff's agent was authorized to rely. So far as appears, no representation was made as to the value of the furniture contained in the apartment house and no evidence was produced tending to show its value.

■ It appears, therefore, that there was evidence presented during the trial of the action from which the jury could have· arrived at the conclusion that the apartment house property would have had a value of between $176,000 and $180,000 if the representation that there was an existing mortgage of $100,000 upon it had been true. There was also evidence that the actual value of the property at the time the negotiations for the exchange were being carried on was between $132,000 and $136,000. In accordance with the hereinabove stated rule for the measurement of damages in cases of this character, plaintiff would, therefore, be entitled to an award of approximately $50,000. However, the jury was also entitled to take into consideration, as they undoubtedly did, that plaintiff was benefited to the extent of $25,000 by reason of the fact that the mortgage executed by defendant Zuckerman, while it purported to secure a loan of $100,000, in reality secured a loan of $75,000. Since plaintiff's equity in the property was thereby increased to the extent of $25,000 the jury was warranted in reducing by this figure the amount representing the difference between the real value of the property and the value it would have had if the false representation had been true. We conclude, therefore, that the jury's award of $25,000 is not unsupported by the evidence.

■ Plaintiff further contends that the jury should have been instructed that from whatever award it might give because of the fraud it should deduct the unpaid part of the

purchase price represented by plaintiff's note for $35,000 secured by the deed of trust. It is conceded that no instruction to this effect was requested and that the failure of the court so to instruct the jury is not specified as an error of the court on this appeal. The rule is well established that the failure of a trial court to give an instruction may not be reviewed on appeal unless the record specifies the instruction and shows that it was requested and refused. (*Hand* v. *Scodoletti*, 128 Cal. 674 [61 Pac. 373]; *Estate of Higgins*, 156 Cal. 257 [104 Pac. 6]; *Gilbert* v. *Peck*, 162 Cal. 54 [121 Pac. 315, Ann. Cas. 1913C, 1349].) Plaintiff nevertheless contends that an inherent duty rested upon the trial court to instruct the jury as suggested and that the failure of the court to perform this duty was the direct cause of the return by the jury of a verdict for an inadequate amount. Since we entertain the opinion, as hereinabove stated, that the award was not inadequate and that it is supported by the evidence, it necessarily follows that we are of the opinion that no error was committed by the court in failing to give an instruction admittedly not requested.

Pending the appeal herein by plaintiff the defendant Bank of America of California moved to dismiss the appeal or to affirm the judgment. Since this opinion disposes of the appeal on its merits, it is unnecessary to consider the motion. (*Barbour* v. *Flick*, 126 Cal. 628, 635 [59 Pac. 122].)

For the reasons stated herein, the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 30, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1933.