[Civ. No. 3336. Fourth Dist. Jan. 12, 1945.]

THE PEOPLE, Respondent, v. D. PAUL JONES et al., Appellants.

Harry W. Horton for Appellants.

Holloway Jones, Lincoln V. Johnson, George C. Hadley, Joseph F. DeMartini and Jack M. Howard for Respondent.

GRIFFIN, J.—This is a proceeding in eminent domain commenced by the People of the State of California acting by and through the Department of Public Works to acquire certain property for the relocation of a state highway. Trial was had by the court without a jury. Defendants and appellants are the fee simple owners of a small tract of land known as Boulder Park, containing about 70 acres, located at the crest of Mountain Springs grade on state highway route 12, in Imperial County, near the San Diego County line. The state highway from El Centro to San Diego formerly traversed defendants' fee property upon which had been constructed certain improvements consisting of a garage, service station, restaurant and auto court. Adjoining and to the east of the Boulder Park property defendants had located two mining claims which are unpatented. No part of the fee simple property, i. e. Boulder Park, was taken in this condemnation proceeding.

Traveling toward Imperial Valley, at a point (Station 35, Exhibit A) approximately 1,200 feet south of defendants' filling station, the new highway and old highway meet and form a junction. The old highway was a narrow, winding, concrete highway. The new highway leaves the old one in an easterly direction and immediately proceeds through a cut approximately 80 feet below the grade of the old highway. It then follows, in the shape of an arc, the general course of the old highway, at a distance approximately 400 feet east of the east line of that highway. It again intersects the old highway, for the first time, at a point about 8,000 feet north of Station 35, i. e. Station 115. At Station 35 access to the property of defendants was left available. However, because of the cut and lower grade of the new highway, defendants'

property was left invisible to traffic proceeding on the new highway and because of the change of grade access to the old highway at Station 115 was not traversible, and for that reason was closed by a barricade. Access to defendants' property on the old highway from the north, i. e. from Imperial Valley, was not possible.

Plaintiff's evidence shows that from defendants' buildings south and along the old road to Station 35 thence northerly along the new road to Station 115, the distance is shorter than by the old road and less hazardous. The old highway between the points mentioned was abandoned by the Highway Department.

At the trial the defendants produced witnesses who testified as to the value of the acreage taken and the large depreciation in the value of defendants' property by reason of the new highway construction.

Seasonable objections were made by plaintiff to the offered testimony as to the claimed market value and damages in each instance on the grounds that it was incompetent, irrelevant and immaterial. The trial court overruled the objections and received the testimony. Before final submission of the case a motion was made to strike the testimony of each defendant and their witnesses. The motion was taken under submission by the trial court. The judge, by stipulation, viewed the premises. Subsequently, and at the time of rendering its decision, the court granted the motion and struck out the entire testimony of defendants and their witnesses.

The trial court then found that the defendants' rights of access to their property from the highway constructed on the parcel condemned were not and had not been impaired by the construction of the new highway; that the diversion of traffic from the old highway was noncompensable; that defendants are not entitled to any compensation for any alleged damage or depreciation to their remaining property by reason of the construction of the highway and that the value of the property sought to be condemned (i. e. easement across unpatented mining claim) is $65; that there was no damage to defendants' remaining property by reason of the severance and the construction of the highway in the manner proposed.

The case of *People* v. *Gianni*, 130 Cal.App. 584 [20 P.2d 87], followed by *City of Stockton* v. *Marengo,* 137 Cal.App.

760 [31 P.2d 467], lays down the rule that a compensable claim does not exist in favor of a defendant in condemnation merely by virtue of the fact that a new highway is constructed which results in travel following the new highway rather than choosing to follow the old highway passing the defendants' improvement or property. This rule is conceded by defendants but they argue that the evidence conclusively shows that their property, after the taking, was rendered valueless (1) by reason of the change of ingress and egress to and from the property; (2) by reason of leaving their property invisible to or from the highway; (3) its isolation by virtue of the claimed cul-de-sac; (4) that the trial court struck material evidence relating to the value of the acreage actually taken; and that therefore the ruling of the court striking the testimony in reference to the market value and claimed damages was error, citing *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818].

The reason for striking, *in its entirety,* the testimony of defendants and their witnesses is not set forth nor do we find any justification for such action. The trial court refused to strike the testimony of plaintiff's witnesses bearing on the same subject matter, i. e., the value of the property taken.

We will summarize a portion of that testimony which was stricken to illustrate the error of which defendants complain.

Defendant J. F. Jones testified that he was one of the co-owners with the other defendants of the property and claims here involved; that in January, 1936, they looked the property over for the possibility of future developments; that the property was the first point of view of the Salton Sea and floor of the valley for travelers to the East; that a spring of water was located on one of the mining claims, which water was necessary to develop in connection with the proposed use of the entire property as a mountain resort; that it was on the main highway and was the first stopping place for people coming out of the valley where they could obtain water after ascending a nine-mile grade; that there was a natural point of rock where people assembled to view the valley and which defendants prized highly; that in January, 1936, they acquired the fee property, and in September, 1936, located the two claims mentioned; that they subsequently did all assessment work required thereon and that they are now entitled to a patent at any time; that a cement tank or reservoir was

constructed on the mining claims property which reservoir held approximately 7,500 gallons and the water therefrom was pumped on the other claim and then used on the fee property; that the 80-foot cut was made about midway between the first reservoir site and the buildings on the fee property; that the same cut through a higher and larger reservoir site which they had planned for future use and which is now unusable as such; that a horseback trail was built through rocks from the defendants' buildings to the first reservoir site; that plans were made to build a swimming pool on the claim about 200 feet below the springs and that the deep cut constructed by the state crossed the natural pathway to it from the resort site, cutting off egress and ingress to it; that calcium and lime deposits were discovered on the claims when they were first staked out; that a large rock building was built on the fee property; also a garage and engine house, two cabins and a 25,000-gallon tank of rock and cement; that when these buildings were completed defendants enjoyed a good business.

The defendant was then asked the following question: ". . . Mr. Jones, what was the value of the real estate inclusive of the buildings or improvements and exclusive of any mineral values of these three parcels of property that adjoined each other there as of the time this suit was started in October, 1938?" To which he answered that he considered the property there was worth or valued at about $18,000; that the value of the improvements was about $16,000; that the mineral value of the claim was worth about $20,000; that a strip about 400 feet wide and 190 feet long running across the main deposit on the claim was taken by this condemnation (about two acres) which was worth about $15,000; that the value of the ground alone (13 acres) which was and which ran across the placer claims was $1,600, i. e. "a little over $125 an acre"; that the value of the entire property and improvements, exclusive of the minerals at the time of the taking was $34,000; that the value depreciated to $1,500 and that the loss eliminated from consideration the matter of diversion of traffic; that there never were any sales of property in that vicinity during his knowledge of it except such sales as were made to the state for highway purposes; and that he heard that the property adjoining his property was sold to the state for that purpose for $125 an acre; that since the construction of the new highway, travelers thereon could not see any of his build-

ings or structures on his property; that the old highway was blocked off or barricaded about 400 yards north of his place of business forming a cul-de-sec or "blind alley," as well as being blocked off at Station 115; that the "Y" intersection leading to his place of business from the new highway at Station 35 was so poorly constructed as to make it so dangerous as to be practically impassable and discouraged patrons from coming to his place of business; that it is necessary for him, in going from his place of business to Imperial Valley via the new highway to travel one-fourth of a mile farther by reason of the cul-de-sac; and for these reasons he had been damaged in certain sums (which were separately specified); and that his property value had been reduced to $1,500.

In open court defendant offered testimony of the other defendants and other witnesses. Counsel for plaintiff then stipulated that all of them would testify ". . . in substance as to the same values, and as to the same improvements, and as to the same reasons for depreciation in value that has been given by the last witness on the stand." Counsel for plaintiff then called witnesses in rebuttal who testified that the mining property, as such, was worthless and that there was no market for that type of land considering all the uses to which the property might be put; that the portion taken was worth $5.00 an acre or $65 for the entire 13 acres taken, together with any improvements thereon; that the remaining land, i. e., the 40-acre claim, had not been damaged or depreciated in value by reason of the taking; that this figure did not take into consideration any damage to the fee property.

The trial court allowed defendant $65 in accordance with the testimony of plaintiff's witnesses and disregarded and struck from the record all testimony of defendants and their witnesses.

There was sufficient competent and material evidence produced by the defendants to create a conflict with that produced by the plaintiff and should at least have been considered in arriving at a just and fair determination of the issues presented, particularly in view of the finding of the trial court that the defendants were not entitled to any compensation for any damage or depreciation to their mining claim property by reason of the construction of the highway and that the value of the property sought to be condemned was only $65.

■ Ordinarily, the market value of land which is taken in eminent domain, estimated at the time of the commencement of the action, is the measure of damage for the condemnation thereof, and in estimating the market value, any and all purposes to which the land may lawfully and reasonably be adapted shall be considered. When land taken in eminent domain is reasonably suitable and may be legally used for purposes which would enhance its value, that fact should be taken into account in estimating the market value of the tract. (*People* v. *Olsen,* 109 Cal.App. 523 [293 P. 645]; *City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737]; *City of Los Angeles* v. *Klinker,* 219 Cal. 198 [25 P.2d 826, 90 A.L.R. 148].)

■ The apparent fact that there is no market value of land, in a strict sense, does not entitle plaintiff to take lands without paying just compensation. (*City of Stockton* v. *Ellingwood,* 96 Cal.App. 708 [275 P. 228].) ■ If an owner is making only a minor use of the premises, he cannot be deprived of his value for a major use if that major use is authorized and gives it a higher market value, irrespective of whether the owner does or does not utilize the property for the purposes which give it its major use. (*City of Stockton* v. *Ellingwood, supra.*)

In *Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 528 [28 P. 681], it was held that the owner of lands whose property is sought to be taken for a public use, who has resided upon it and owned it for many years, will be presumed to have acquired sufficient acquaintance with it, and of the value of the land in that neighborhood, to be able to give an intelligent estimate of its value.

Section 1248 of the Code of Civil Procedure provides in such actions that "The court . . . must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess: 1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed; 2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the

manner proposed by the plaintiff; . . . 7. As far as practicable, compensation must be assessed for each source of damages separately." (*People* v. *Marblehead Land Co.*, 82 Cal.App. 289 [255 P. 553]; *City of Stockton* v. *Marengo*, 137 Cal.App. 760 [31 P.2d 467]; 10 Cal.Jur. p. 357, et seq., §§ 68, 69, 70; 5 Cal.Jur.Supp. p. 450, et seq., §§ 54, 55, 56, 58.)

 In addition to defendants' testimony, a witness who was familiar with and handled many mining claim proofs and who acted as proof officer in making valuations for the government and who in addition had testified as an expert witness in court on many occasions to such valuations, testified that he made detailed investigation of every part of defendants' claims and lands; that defendants filed on one claim, claiming mineral rights and all "water and timber rights appurtenant thereto" and "allowed by law"; that water was pumped from the spring on one dam to a reservoir on the other claim and from there the water was piped and flowed by gravity to the fee property for use. The witness also testified that water is a mineral and that the user thereof is permitted under the government regulations to use it for "placer and domestic purposes in connection with the dwellings thereon." He gave an opinion *as to the separate valuation of each improvement on the entire property, the valuation of the two placer mining claims independent of any mineral value, and testified that the mineral deposit thereon was almost entirely within the strip of land taken and that the deposit on such claims was obliterated by a fill of 45 feet; that the 40 acres in the two claims were worth $875 per acre.*

All of this evidence was ordered stricken by the court. We are convinced that at least part of this evidence was material and did bear upon the valuation of the acreage condemned and may have had an important bearing upon the remaining property, depending upon proper findings which should be made from the entire evidence offered. Whether the evidence in this case, if considered in its entirety, established as a fact that defendants' improvements and property were left in such a condition by the acts of the plaintiff as to form a cul-de-sac and bring it within that definition depends upon a proper finding of the court based upon the entire evidence submitted in reference thereto. A proper finding should be made upon the subject so as to determine whether or not the decision in *Bacich* v. *Board of Control, supra,* in reference to

a cul-de-sac, may be applied to the conditions here presented. In that case it is said, at page 349:

"In the instant case we are concerned with a property right known as the right of access which an owner has in the street upon which his property abuts and which is appurtenant to such abutting property. The function of the court is to determine and define the character and extent of that right. The right of access being by its terms general in nature, requires definition and clarification as to its extent and character. This is especially true where we are concerned with the constitutional provision which requires that compensation be paid where property is taken or damaged. The property right of access generally is firmly established. . . . That right has been described as an easement of ingress and egress to and from his property or, generally, the right of access over the street to and from his property, and compensation must be given for an impairment thereof. . . .

"Whether or not such impairment is compensable must depend upon the character and extent of his easement of access. . . . If he has access to the next intersecting street in both directions and one way is cut off, his easement, if it has any value to him at all, has certainly been impaired. We conclude, therefore, that the right of access extends in both directions to the next intersecting street."

It will be noted, however, in that case, that the court specifically stated the rule as applied to intersecting streets, and stated further that it was not concerned with the *correct rule in a case where the obstruction occurs beyond the next intersecting street, nor what the rule may be for rural property.* The trial court should therefore make a proper finding based upon the entire testimony as to whether or not a cul-de-sac was formed by virtue of the improvement and whether defendants were entitled to recover from such source of damage in the light of the Bacich decision under the latest interpretation of the cul-de-sac rule.

In upholding the order of the trial court striking the entire testimony of all of the defendants and their witnesses, plaintiff relies principally upon the rule stated by Mr. Justice Gibson in his minority opinion in *Rose* v. *State of California, supra,* to the effect that where the opinion of a witness as to diminution in the value of property is based partially on noncompensable items of damage which he is unable to

segregate from the lawful elements of damage, a motion to strike his testimony should be granted. In the instant case the witnesses not only gave opinions as to the diminution in value of the property in its entirety, but also segregated the damages as to the mining claim property and other claimed damage. We therefore believe that the rule stated has no application in the instant case, and the trial court should comply with the provisions of section 1248, subdivision 7, of the Code of Civil Procedure, and as far as practicable, separately assess compensation for each source of damage properly allowable.

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.