[Civ. No. 3165.   Fourth Dist.   Mar. 13, 1945.]

E. L. EUBANKS, Respondent, v. MILTON G. COOPER & SON, INC. (a Corporation), Appellant.

W. H. Stammer and Galen McKnight for Appellant.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Respondent.

GRIFFIN, J.—Action for damages for breach of cropping agreement. Defendant corporation, by written agreement dated January 7, 1943, granted plaintiff the right to enter upon a certain ranch owned by it in Fresno County for the purpose of growing crops thereon during the cropping season of 1943. The contract provided generally: (1) that plaintiff shall furnish labor, materials and all costs of operation and furnish all necessary work, including the harvesting of crops; (2) the plaintiff agrees to farm the premises in a good farmer-like manner and keep them clear of noxious weeds; (3) that in the event of the violation of any of the provisions of the contract by plaintiff, defendant, at its option, may have the right to perform any work necessary and charge the cost to the account of plaintiff, or defendant may terminate the agreement; (4) the title to the crops growing and to be grown shall remain in defendant and it shall have the right to sell said crops, and out of the proceeds of the vineyard and orchard crops pay plaintiff 50 per cent thereof; out of the proceeds of the cotton crop 80 per cent; and from the alfalfa or other field crops 60 per cent. Defendant is authorized thereby to deduct any monies advanced by it.

Plaintiff, in his complaint, alleges that after the execution of the agreement he entered upon the property, planted, cared for and commenced the production of crops; that growing on

the 236 acres involved were 17 acres of grapes, 6 acres of nectarines, and 40 acres of alfalfa. Plaintiff claims to have planted 37 acres of tomatoes, 2½ acres of cucumbers, and about 97 acres of cotton. Defendant claims that by actual survey there were only 221.48 acres in the entire ranch; that less acreage was actually planted in comparison with that claimed by plaintiff; and claims particularly that there were only 27.81 acres of tomatoes set out.

The complaint further alleges that on June 17, 1943, contrary to the terms of the agreement, defendant took exclusive possession of all of the property except the portion planted to cotton, and wrongfully prevented plaintiff from entering thereon, from further caring for or bringing to maturity the crops growing thereon, and from further performing said agreement; that thereafter, defendant corporation negligently and wrongfully failed to properly irrigate and care for the tomatoes and cucumbers growing thereon and proximately caused the destruction thereof; that plaintiff, at all times, was an experienced farmer and specialized in growing and selling cucumbers, and until the breach of the agreement by defendant he carried on all of the farming operations provided for in the agreement in a good and farmerlike manner; that during such time all of the crops were in a healthy and thriving condition and that he kept and performed all of the covenants and agreements on his part to be performed until the defendant prevented further performance thereof; that, except for the breach of the agreement by defendant, plaintiff would have cared for and brought to maturity all of the crops growing on the land; that as the proximate result of the breach of the agreement by defendant plaintiff was damaged; that the tomatoes would have been of the reasonable net market value of $22,200, and after deducting all expenses and after distributing to the defendant corporation its distributive share, plaintiff was thereby damaged in the sum of $13,320; that if plaintiff had not been wrongfully prevented from caring for and harvesting the cucumber crop, that acreage would have produced in the year 1943 cucumbers of the reasonable net market value of $2,000, and that after deducting defendant corporation's distributive share, he was thereby damaged in the sum of $1,200; that as a result of the loss of the grape crop his distributive share would have been $1,860; that by reason

of the loss of the crop of nectarines he was damaged in the net sum of $1,346.25; that in the loss of the alfalfa crop, his net damage would have been $1,320. The total amount prayed for was $19,046.25.

Defendant corporation, by way of answer, denies generally the allegations of the complaint, admits that plaintiff planted 2½ acres of cucumbers and 30 acres of tomatoes, and alleges generally that the plaintiff was not farming the premises in a good and farmerlike manner and was not controlling or keeping them free from grasses and other noxious weeds; that on June 17, 1943, defendant corporation decided to take over certain portions of the crops under the provisions of the contract and to do the work which it believed to be necessary to their preservation; that it did so over plaintiff's objections; that it employed plaintiff's foreman and continued to care for a portion of the crops for approximately three weeks; that plaintiff came on the ranch every day but performed no work except caring for the cotton; that at the end of three weeks defendant requested plaintiff to resume the farming of the entire premises but that plaintiff refused to do so and that he thereby abandoned all the crops except a part of the cotton which he later harvested and sold; that thereafter defendant continued with and completed the farming and harvesting of all the crops except the tomatoes which defendant believed to be in such a condition that production of a profitable crop was impossible. The cotton crop was harvested by plaintiff.

By way of cross-complaint defendant corporation claimed that it had been damaged in the sum of $14,969.06 for failure of plaintiff to fully comply with the terms of the agreement and for monies advanced to and for the benefit of plaintiff.

After trial the jury returned a verdict in plaintiff's favor in the net sum of $9,000 by way of damages.

It is defendant's position upon this appeal that under the circumstances disclosed by the evidence the amount of the verdict was so outrageous and unconscionable as to suggest at first blush that the verdict was a result of passion and prejudice; that the measure of damages to which plaintiff's evidence was directed was not the proper measure of damages; that the verdict allowed to plaintiff a profit upon the abandoned tomatoes out of all reasonable proportion to the profit he could have made if the contract had been performed on

both sides; that in any event, plaintiff was under a duty to minimize his loss, if any, and that he refused to do so when the opportunity was afforded to him by defendant; that the amount of the verdict was the result of errors at law committed by the trial court in the admission of evidence and instructions to the jury; and that there was prejudicial misconduct on the part of plaintiff's counsel.

Defendant concedes that there was a sharp conflict in the evidence as to which party breached the contract; whether plaintiff farmed the premises in a good and farmerlike manner; whether the crops were choked with noxious grasses; whether the cucumber crop was entirely lost because of improper care; and whether the tomatoes were so neglected that it was impossible to produce a crop that could be marketed at a profit. It is further conceded that on these issues the jury resolved the conflict in favor of plaintiff. The evidence on the question whether the defendant forcibly excluded plaintiff and forcibly prevented him from harvesting the crops is likewise in dispute.

There is evidence that on June 17, 1943, Mr. Cooper suddenly made demands on plaintiff that he turn over the place to him, with the exception of the cotton land.

Plaintiff testified that Cooper said ". . . that he (Cooper) was taking the place over"; that "I (Eubanks) didn't have any right in there any more, for me to get out . . . that I told him he didn't have to do that, that he could buy me out; otherwise, he would have to take it over my dead body"; that "I (had) taken my gun out that morning and I told him he wasn't taking over"; that Cooper said "I can't say anything, you got a gun"; that he, Eubanks, went to see his lawyer, returned and informed Cooper "that we would settle that in court." He then testified that three weeks after Cooper took over the property Cooper asked plaintiff to take the land back because "he had too much to do"; that he didn't know anything about farming himself . . . couldn't handle it," and that "he (Cooper) had ruined the tomatoes and cucumbers" and let the grass grow over all the place; that Cooper expected plaintiff to bring back the crops to where they were, because it would cost him $1,500 to clean out the grass; that Cooper, as a condition to taking back the property, wanted to put a younger man in charge of the alfalfa, vines and fruit trees; that Cooper refused to advance any more money in the care of the tomatoes.

■ Cooper denied this conversation. There is evidence, if believed by the jury, in opposition to defendant's claim that plaintiff was obligated to take over the crops in order to minimize the damages, that the offer to return the property was conditional, and exacted the expenditure of a substantial sum of money by plaintiff not contemplated by the agreement, and also that the offer was made at a time too late to effect a recovery of the crops for lack of cultivation and water, and as a result of defendant's neglect. Under these circumstances, the rule as to minimization of damages is not applicable.

In *Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840 [147 P.2d 558], it is said:

"The duty to minimize damages does not require an injured person to do what is unreasonable or impracticable and, consequently, when expenditures are necessary for minimization of damages, the duty does not run to a person who is financially unable to make such expenditures. . . . The essence of the rule denying recovery for losses which could have been prevented by the reasonable efforts and expenditures of plaintiff is that his conduct rather than that of defendants proximately caused such losses."

In *Sobelman* v. *Maier*, 203 Cal. 1 [262 P. 1087], it is said (quoting from *Fountain* v. *Semi-Tropic Land & Water Co.*, 99 Cal. 677 [34 P. 497]):

" 'If, however, the breach be of a covenant, the nonperformance of which will render it impossible for the other party to perform, or will frustrate the whole purpose of the contract on his part . . . he may decline to proceed in performance and sue for damages, in which case he may recover all loss occasioned by the breach,—including profits he would have made if the contract had been performed. . . .' " Sutherland on Damages, vol. 1, p. 113 (1st ed.), announces the same rule. (See, also, *Holt Mfg. Co.* v. *Thornton*, 136 Cal. 232, 235 [68 P. 708].)

■ We are well aware that there is substantial evidence contrary to plaintiff's testimony. When reviewing the evidence in support of a verdict, an appellate court must accept as correct all substantial evidence tending to uphold the verdict and must consider the evidence in the aspect most favorable to the prevailing party; when the evidence is conflicting the court will presume that the evidence in support of the verdict is true. (*De La Motte* v. *Rucker*, 55 Cal.App.2d 226 [130 P.2d 444].)

Plaintiff's instructions on the measure of damages were proper under section 3300 of the Civil Code. (*Cederberg v. Robison,* 100 Cal. 93 [34 P. 625] ; *Paul v. Williams,* 64 Cal. App.2d 696 [149 P.2d 284] ; *Shoemaker v. Acker,* 116 Cal. 239, 244 [48 P. 62].)

Defendant's main complaint concerning plaintiff's instructions is that they should have also covered the question of the claimed duty of plaintiff to minimize his damages. Defendant offered no instruction on this subject. Where a general instruction is given which is correct as far as it goes, being deficient merely by reason of its generality, the injured party may complain on appeal only in case he requests that the charge be made more specific or asks for other qualifying instructions, and his request is denied. (*Western States Gas & Electric Co.* v. *Bayside Lumber Co.,* 182 Cal. 140 [187 P. 735] ; *Bloomberg* v. *Laventhal,* 179 Cal. 616 [178 P. 496] ; 24 Cal.Jur. § 74, p. 796; *McFate* v. *Zuckerman,* 130 Cal. App. 172 [19 P.2d 532].)

In addition thereto, it may be said that many of the instructions offered by defendant in support of its cross-complaint and given by the court were basically identical with plaintiff's challenged instructions. Under the elementary rule of law, defendant should be estopped from now claiming that plaintiff's instructions on the same subject were erroneous. (*Collins* v. *Graves,* 17 Cal.App.2d 288 [61 P.2d 1198].)

Plaintiff testified fully on the question of claimed damages. After reciting in detail his several years of experience as a tomato grower and general farm worker, as well as his familiarity with the west coast market in the sale of the several products involved, he testified that if defendant had permitted him to carry out the contract and complete the harvesting of the respective crops, the net profits to him on the tomatoes would have been $16,914; cucumbers $862.50; grapes $1,903.71; nectarines $139.05; alfalfa hay $1,744.64; making a total of $21,563.90, and that after deducting the amount he owed for advancements made by defendant in the sum of $2,025.02, there was a total amount due him by way of damages in the sum of $19,538.88. This estimate of damage was predicated on the number of plants per acre planted, the average market value, tonnage per acre, and the prevailing market price in San Francisco, San Diego and local markets. Plaintiff testified that he was thoroughly familiar with the

particular market price of the various products in 1943, at the time in question, and that the price he figured was based upon his knowledge of that market.

Defendant produced several witnesses who, in effect, testified that it was impossible to produce the amount of tonnage of crops on the acreage specified, that there was no market for tomatoes at the time in question or, if so, the market value of these particular crops at the time here suggested was of such a small amount that it would be impossible for the plaintiff to produce the volume of crops testified to by him, or to obtain the amount of claimed revenue therefrom, and that therefore plaintiff suffered no damages or, if any, such damages were only nominal.

Defendant concedes that the tomato and cucumber crops were a net loss, but argues that there was only due to plaintiff from the grape crop, nectarines and alfalfa the sum of $1,915.66, and that its total advancements exceeded that amount, which would leave a balance in defendant's favor. It is also contended that in addition thereto defendant should be allowed damages for failure of plaintiff to carry out the contract. These issues were resolved against the defendant by the jury. It was fully instructed on those issues. It was told that such damages allowable, if any, must be over and above any monies advanced by defendant for the benefit of plaintiff and that the damages awarded must be for the *net* loss to plaintiff.

In support of the argument that the verdict is excessive, counsel for defendant have pointed out several cases wherein the gross value of the loss of 45 acres of tomatoes was fixed at $2,489.87 (*Shimbori* v. *Coelho,* 18 Cal.App.2d 641 [64 P.2d 479]) ; and *Paul* v. *Williams, supra,* where the partial loss of 40 acres of tomatoes was found to be $2,054.50. The cited cases are factually different and do not necessarily establish a gauge which must prevail as against the facts in the instant case. (8 Cal.Jur. § 91, p. 838.) It is true that there is very little, if any, corroborating evidence supporting plaintiff's testimony as to the prospective net yield of the crops or of the market value thereof. However, plaintiff's testimony was full and complete on the subject. The testimony of defendant's witnesses, in this respect, from the record, appeared to us to be more convincing, of greater weight, and possessed of much more corroboration than that of plaintiff's. However, this is not the test to be applied by an appellate court to justify

a reversal of the implied finding of the jury. The trial court, as a thirteenth juror, considered all of these questions on a motion for new trial, as well as the excessiveness of the verdict. That is the proper forum in which to first press that issue and the trial judge, guided by different rules, should there be governed by the facts, weight of the evidence, the justice of the case, and allow only such damages as are commensurate therewith, notwithstanding the verdict of the jury. Appellate courts are prone to uphold the discretion thus reposed in trial judges in so doing. The amount of the award was over $10,000 less than the damages testified to by plaintiff, after deducting the amount advanced by defendant. The amount of the verdict was within the evidentiary limits and the trial court approved that amount on a motion for new trial. While we are firmly convinced that the evidence would have fully supported an order of the trial court granting a new trial on the issue of damages, it cannot be said, as a matter of law, that the verdict of the jury was purely the result of passion and prejudice such as to permit this court to order a new trial based upon that ground. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 366 [184 P. 672, 12 A.L.R. 1007]; *Swain* v. *Fourteenth St. R. R. Co.*, 93 Cal. 179 [28 P. 829]; *Hickey* v. *Coschina*, 133 Cal. 81 [65 P. 313]; *Wilson* v. *Fitch*, 41 Cal. 363, 386.)

The question of the qualification of plaintiff to testify as to the reasonable market value of the crops in issue was a matter within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless a manifest abuse of that discretion is shown. The decision of the trial court upon the qualification of the witness to testify on that question is like any other question of fact to be determined by the trial court and will be reversed only where there is an actual want of substantial evidence to support it. (*Johnson* v. *Western Air Express Corp.*, 45 Cal.App.2d 614 [114 P.2d 688]; *Valdez* v. *Percy*, 35 Cal.App.2d 485 [96 P.2d 142]; *People* v. *Jones*, 67 Cal.App.2d 531 [155 P.2d 71].)

Defendant's claim of misconduct on the part of counsel for plaintiff is predicated mainly upon the fact that counsel for plaintiff endeavored to show that defendant company was the owner of other extensive ranch holdings, and secondly, that from 1936 on it had put off every man on the land here involved that had gone upon it. Objection was made to a

*question* touching upon this last complaint. The court sustained the objection and instructed the jury to disregard the *question*. It will be presumed that the court's instruction to the jury to disregard the *question* was followed and that no prejudice resulted. (*Ades* v. *Brush,* 66 Cal.App.2d 436, 445 [152 P.2d 519]; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595, 607 [111 P.2d 346].) The fact that the defendant was the owner of other extensive ranch holdings came before the jury in connection with the activities of Mr. Cooper's own experience in farming and in proof of his several accounts offered in evidence, as well as for other material purposes. It will not be presumed that the jury was influenced by the size of defendant's other holdings or that any prejudice was engendered by reason of defendant's extensive operations. While the jurors may have entertained such a thought in their own minds in rendering the verdict, it is difficult for us to say, as a matter of fact or law, that they were so influenced.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.