[L.A. No. 29972. In Bank. Sept. 11, 1972.]

KIM CAPELOUTO, a Minor, etc., et al., Plaintiffs and Appellants, v.
KAISER FOUNDATION HOSPITALS et al.,
Defendants and Respondents.

890

## Counsel

Shulman & Shulman and Adley M. Shulman for Plaintiffs and Appellants.

Robert E. Cartwright, Edward I. Pollock, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett, Leonard Sacks, Irving H. Green, Elmer Low, Robert P. Fry, Samuel Shore, Daniel Fogel and George R. Royce as Amici Curiae on behalf of Plaintiffs and Appellants.

Thelen, Marrin, Johnson & Bridges, James M. Radnich and Henry W. Holmes, Jr., for Defendants and Appellants.

## OPINION

**TOBRINER, J.**—In this case we consider the right of an infant to recover damages for the pain and suffering incidental to an illness contracted as a result of medical malpractice. As we explain below, an infant may recover damages for pain and suffering on the same basis as an adult. Indeed, lay testimony, as well as expert testimony, may support such an award. Moreover, in certain cases the trier of fact may infer pain and suffering from the nature of the injury alone. In accordance with these principles we hold that in the instant case an instruction to the jury foreclosing compensation to the infant for pain and suffering worked both error and prejudice, compelling the order of a new trial.

Rachel Capelouto was admitted to the Kaiser Hospital Sunset facility in the early morning of July 30, 1964, and at 6:45 a.m. she gave birth to her daughter Kim. Rachel and Kim were discharged from Kaiser on August 2; shortly thereafter Kim developed the first symptoms of a gastrointestinal disorder which was to cause her recurrent distress throughout the entire first year of her life. At various times she suffered from projectile vomiting, severe diarrhea, dehydration, cramps and shock. At times the dehydration was severe enough to require the introduction of intravenous feeding devices, and in the fifth month of her life the attending physician concluded that her condition had so deteriorated as to endanger her life. She was hospitalized six times during her first year, the initial hospitalization occurring on August 5 when she was barely one week old. Laboratory tests of Kim's stools indicated the presence of the bacteria salmonella Newport, C-2, and her physician eventually decided that the salmonella infection was the primary cause of her symptoms. Following treatment for salmonellosis Kim's condition gradually improved. Ultimately she recovered completely; she suffered no permanent disability.

Kim had contracted the salmonella infection while at Kaiser Hospital immediately after her birth. The initial source of the infection lay with Mrs. Lipsitz, an asymptomatic carrier of the bacteria, who herself had been admitted to Kaiser for childbirth. Salmonella spreads by transmission from the stools of an infected person to the mouth of the recipient, generally via some neutral medium such as unwashed hands. Mrs. Lipsitz's son, Robert, apparently contracted the disease at childbirth when the close proximity of the anal and birth canals facilitates transmission. Robert was placed in the same newborn nursery as Kim; he first exhibited symptoms at 8:40 p.m. on July 30, 30 hours after his birth. Eventually seven infants in that nursery, including Robert and Kim, were diagnosed as having salmonellosis, as were seven other infants housed in a different nursery

at Kaiser. The entire Kaiser maternity unit was temporarily closed during one period of that August as a result of the epidemic.

In an action for malpractice Kim sought both special and general damages. At the defendants' request, the trial court instructed the jury, in part: "You are not permitted to award Kim Capelouto damages for physical pain and mental suffering which, although possible, is under the law incapable of proof because of the age of the child." The jury awarded Kim $1,510.24, the precise amount of the medical expenses. After the court denied a motion for a new trial Kim appealed.[1] Three issues confront us: the propriety of the above instruction; the viability of recovery for pain and suffering in the absence of expert testimony, and the proper scope of a possible new trial.

Turning first to the issue involving the instruction, we note that this court has ruled: "If a cause of action is otherwise established, it is settled that damages may be given for mental suffering naturally ensuing from the acts complained of." (*State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal. 2d 330, 338 [240 P.2d 282].) In general, courts have not attempted to draw distinctions between the elements of "pain" on the one hand, and "suffering" on the other;[2] rather, the unitary concept of "pain and suffering" has served as a convenient label under which a plaintiff may recover not only for physical pain but for fright, nervousness, grief, anxiety, worry,

---

[1]The complaint alleges a separate cause of action by Kim's parents for their own mental and physical distress arising from defendants' negligence. Pursuant to plaintiffs' request, this issue went to the jury under the instruction that the parents recover "reasonable compensation for any pain, discomfort, fears, anxiety, and emotional distress suffered by the parents, of which the injury to their child was a proximate cause." The jury nonetheless found for defendants on this parents' cause of action.

The parents assert that the trial court erred in not further instructing the jury that "a person who, due to the negligence of a Defendant, is exposed to danger of injury to himself as well as a witness to injuries to his child may recover damages for any physical effects upon himself as well as for any mental or emotional distress which he may suffer."

The instruction which the jury was given allows for the parents' recovery for physical or mental injury sustained in the course of caring for the child and responding to her needs. The refused instruction would permit recovery on an additional ground: injuries caused to the parents by the mere *witnessing* of the child's suffering. The trial judge properly rejected this latter instruction, which was based upon our holding in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. *Dillon* makes clear that a parent may recover for witnessing a child's distress only if the parent suffers actual physical injury. (68 Cal.2d at p. 740.) The record in the present case, while demonstrating that Kim's parents suffered the emotional distress and mental anguish that is normal for parents of a seriously ill or injured child, does *not* reveal that the parents suffered the actual physical injury necessary for recovery under *Dillon*.

[2]Indeed, at times physical pain has been identified as one element of mental suffering; e.g., *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173]; *Deevy* v. *Tassi* (1942) 21 Cal.2d 109, 120 [130 P.2d 389].

mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173]; Werchick, *Unmeasurable Damages and a Yardstick* (1966) 17 Hastings L.J. 263.) Admittedly these terms refer to subjective states, representing a detriment which can be translated into monetary loss only with great difficulty. (*Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 511-512 [15 Cal.Rptr. 161, 364 P.2d 337] (dissenting opinion of Traynor, J.); McCormick on Damages (1935) pp. 318-319.) But the detriment, nevertheless, is a genuine one that requires compensation (Civ. Code, § 3333; *State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d 330), and the issue generally must be resolved by the "impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence." (*Beagle* v. *Vasold* (1966) 65 Cal.2d 166, 181 [53 Cal.Rptr. 129, 417 P.2d 673]; cf. *Seffert* v. *Los Angeles Transit Lines, supra,* 56 Cal.2d 498, 507.)

Indeed, mental suffering frequently constitutes the principal element of tort damages (Rest. 2d Torts, § 905, com. c); awards which fail to compensate for pain and suffering have been held inadequate as a matter of law. (*Clifford* v. *Ruocco* (1952) 39 Cal.2d 327, 329 [246 P.2d 651]; *Haskins* v. *Holmes* (1967) 252 Cal.App.2d 580, 586-587 [60 Cal.Rptr. 659]; *Buniger* v. *Buniger* (1967) 249 Cal.App.2d 50, 54 [57 Cal.Rptr. 1]; *Gallentine* v. *Richardson* (1967) 248 Cal.App.2d 152, 155 [56 Cal.Rptr. 237]; *Chinnis* v. *Pomona Pump Co.* (1940) 36 Cal.App.2d 633, 642-643 [98 P.2d 560]; *Bencich* v. *Market St. Ry. Co.* (1937) 20 Cal.App.2d 518, 522 [67 Cal.Rptr. 398].) Thus the instruction which we consider here states a proposition that conflicts with the basic principles governing damages in tort actions. It could be upheld only upon some exotic rationale peculiarly applicable to infant plaintiffs which compelled the special constriction of their rights of recovery of damages.

The instruction given by the trial court in the instant case is grounded upon *Babb* v. *Murray* (1938) 26 Cal.App.2d 153 [79 P.2d 159]. In *Babb* the infant suffered a fracture of both femurs and underwent traction, remaining in the hospital for five weeks. The injury resulted in a slight deformity which the attending physician predicted would disappear within four to five years. Although the Court of Appeal did state that the child's age (apparently three to four months) rendered her damages for pain and suffering incapable of proof, the court struck down the damage award of $7,000 as excessive because plaintiff had deliberately induced prejudice by emphasizing that defendant was intoxicated and "driving with a woman . . . not his wife and who was killed in the collision." (26 Cal. App.2d at p. 154.) The appellate court reduced the award to $4,000,

although the court apparently lacked any reliable evidence of the precise amount of plaintiff's medical expenses.

Thus the opinion in *Babb* provides only meager support for the proposition that infants are barred, as a matter of law, from recovery for pain and suffering. The only rationale offered in *Babb* for such a rule is the infant's admitted inability to understand the cause of the pain and suffering; the court offers this explanation of its reasoning: "Manifestly, she did not know what happened to her and, not knowing, was without fear or mental anguish."[3] But as one commentator has pointed out, "the court seems to have confused capacity to suffer with ability to discover the cause of the pain." (2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 411, p. 1615.) Once we recognize this fallacy, little remains to support the *Babb* rule; human experience tells us that infants can feel pain and discomfort even if they do not know the source of it.

The infant's inability to explain the cause of pain or to describe the extent of it does not affect the sting of it. Indeed, the infant's cry of hurt is as poignant as the most detailed exposition. The moan of the injured child, who may even be unconscious, needs no elaboration in descriptive language. Communication flows from all manner of sounds and gestures; it is not confined to brittle or inadequate words. The inarticulate anguish of the infant serves as much a ground for recovery as the adult's most sophisticated description.

We have found no jurisdiction adhering to the rule in *Babb;* indeed, no court has cited the case since its rendition in 1938.[4] Since *Babb,* the

---

[3]"The items of physical suffering, pain and mental anguish, which in so many cases go to make up the 'deteriment' in cases of this kind, were incapable of proof because of the age of the child. There was neither medical nor scientific testimony offered to show whether the child suffered any pain at all, or over any appreciable period. Manifestly, she did not know what happened to her and, not knowing, was without fear, or mental anguish." (*Babb* v. *Murray* (1938) 26 Cal.App.2d 153, 155 [79 P.2d 159].)

[4]Other jurisdictions considering the question have held that infants may recover for pain and suffering. "Certainly it is true that 'regardless of how immature a child is, it is capable of suffering mental pain as the result of physical injury. Mental anguish in some degree necessarily follows physical pain. . . . Mental anguish exists whether the child can recognize it and reason about it or not." (*Illinois Cent. R. Co.* v. *Williams* (1926) 144 Miss. 804 [110 So. 510, 512]; cf. *Gulf C. & S. F. Ry. Co.* v. *Sauter* (1907) 46 Tex.Civ.App. 309 [103 S.W. 201]; *Williams* v. *Jones* (1921) 26 Ga.App. 558 [106 S.E. 616].)

The rationale of barring young children from recovery for pain and suffering would seem to extend to mental incompetents as well. But this argument has also been rejected by those courts that have considered it. "Mental suffering is a presumed consequence of physical injury in the case of an insane person as well as a sane

decisions have upheld recoveries by young children for pain and suffering and have encountered no special problem in so doing. (E.g., *Crane* v. *Smith* (1943) 23 Cal.2d 288 [144 P.2d 356]; *Chinnis* v. *Pomona Pump Co.* (1940) 36 Cal.App.2d 633 [98 P.2d 560].) *Babb* deserves no resurrection from its well earned obscurity. ■ Rather, an infant plaintiff should recover for pain and suffering incurred as the result of negligently caused injury. Any language to the contrary in *Babb* is expressly disapproved.

We turn from defendants' unsuccessful defense of the instruction to its contention that, regardless of the correctness of the *Babb* rule, Kim may not recover for pain and suffering because she did not introduce any medical evidence in support of such a finding.

The absence of medical testimony cannot of itself serve to foreclose recovery for pain and suffering; expert testimony is not a prerequisite to the framing of a question for the jury on this issue. Although plaintiff's own testimony commonly establishes his damages for pain and suffering, attorneys frequently invoke the testimony of other parties as well. We have long upheld the admissibility of such testimony, including that of lay witnesses relating observations of the sufferer's involuntary declarations and expressions of pain. (*Green* v. *Pacific Lumber Co.* (1900) 130 Cal. 435, 440-441 [62 P. 747]; *Lange* v. *Schoettler* (1896) 115 Cal. 388, 393 [47 P. 139]; *Willoughby* v. *Zylstra* (1935) 5 Cal.App.2d 297, 300 [42 P.2d 685]; *Muzzy* v. *Supreme Lodge of the Fraternal Brotherhood* (1933) 129 Cal.App. 1, 9 [18 P.2d 107]; *Williams* v. *A. R. G. Bus Co.* (1920) 47 Cal.App. 568, 570 [190 P. 1036]; *Duran* v. *Yellow Aster Mining and Milling Co.* (1919) 40 Cal.App. 633, 637 [181 P. 395].) As we said as long ago as 1900: "The objection . . . on the ground that the witness was not an expert amounts to nothing. No principle of expert evidence is involved in the question. Nor do we consider the evidence objectionable as hearsay. Involuntary declarations and exclamations of a person's present pain and suffering are admissible as tending in some degree to show his physical condition." (*Green* v. *Pacific Lumber Co.*, supra, 130 Cal. 435, 440-441.)

Thus, although expert testimony may undoubtedly be helpful, it is not necessary to establish a basis for an award for pain; lay testimony suffices. (*Mendoza* v. *Rudolf* (1956) 140 Cal.App.2d 633, 636-637 [295 P.2d 445]; *Employers' etc. Corp.* v. *Ind. Acc. Com.* (1941) 42 Cal.App.2d 669, 671-672 [109 P.2d 716]; cf. Annot. Admissibility, in Civil Case, of Expert

person, unless it is proved that his condition is such that he does not experience pain." (*Scolavino* v. *State* (1946) 187 Misc. 253 [62 N.Y.S.2d 17, 25], mod., increasing award, 271 App.Div. 618 [67 N.Y.S.2d 202], affd. 297 N.Y. 460 [74 N.E.2d 174].)

Evidence as to the Existence or Nonexistence, or Severity, of Pain (1967) 11 A.L.R.3d 1249, 1252.) ▮ Even if the infant may not be able to testify as to his own pain, his burden should not be made heavier by foreclosure of non-expert testimony. We reaffirm our earlier holdings that lay testimony may be admitted and may provide for infants as well as adults the basis for a finding of pain and suffering.

▮ Moreover, even in the absence of any explicit evidence showing pain, the jury may infer such pain, if the injury is such that the jury in its common experience knows it is normally accompanied by pain. (*Mendoza* v. *Rudolf* (1956) 140 Cal.App.2d 633, 637 [295 P.2d 445].) Indeed, for certain injuries the inference of pain may be so compelling that the trial judge would be justified in ordering a new trial if the jury declines to draw it. "[T]he items of pain, suffering and inconvenience . . . are inevitable concomitants with grave injuries. . . . A jury may not eliminate pain from wounds when all human experience proves the existence of pain . . . ." (*Todd* v. *Bercini* (1952) 371 Pa. 605, 607-608 [92 A.2d 538, 539].)

▮ Finally, the record discloses that both medical and lay evidence amply supported a finding of pain, and that such a finding derived further support from the reasonable inference arising from the nature of the injury. In so deciding we reject the suggestion of defendants that plaintiffs must introduce medical testimony which explicitly asserts the existence of pain. In our view the unchallenged description of the child's symptoms in itself suffices to form the basis of an award.

Medical witnesses repeatedly testified that Kim experienced severe diarrhea and vomiting of a projectile nature, that she suffered shock and dehydration, and that she became listless and lethargic during these attacks. Plaintiff's private physician, a pediatrician who treated the child from the age of two and one-half weeks, summarized her condition in a hospital report that was read to the jury: "At two months of age the patient began the first of many episodes which eventually resulted in marked dehydration and necessitated numerous hospitalizations (at least five or six). Each episode would begin in characteristic fashion with nausea, vomiting and repeated retching which would last for a period of one to four hours. This would be followed by the passage of three to four white, mushy slightly frothy stool. A copious green watery diarrhea would then ensue and last for a period of two-four days. Stools could number up to 20 per day. Weight loss would initially be great consisting of twelve ounces to a pound or two. The initial episode suggested a shock-like state with a listless infant, a soft, non-tender abdomen with hyperactive bowel sounds."

The pediatrician's description of Kim's symptoms was repeated in various forms by a number of witnesses; Mrs. Capelouto indeed described the screaming of the child during severe attacks. Thus we do not face a situation in which the jury was given only the cold medical diagnosis of salmonellosis; we have here, instead, detailed descriptions of symptoms from which the jury would be impelled to infer some pain and suffering. We therefore conclude that it is more probable than not that the erroneous instruction produced a result less favorable to plaintiff Kim than would otherwise have occurred. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

We must finally determine the proper scope of the new trial. This court has said that if the "evidence as to liability is in sharp and substantial conflict, and the damages awarded are so grossly inadequate as to indicate a compromise on the issues of liability and damages, the case should be remanded for a retrial of both issues." (*Beagle* v. *Vasold* (1966) 65 Cal.2d 166, 183 [53 Cal.Rptr. 129, 417 P.2d 673].) In such a case the court will not work an injustice upon the defendant by subjecting him to a retrial solely on the issue of damages when the initial verdict, as evidenced by the size of the judgment, represents a compromise by opposing jurors rather than a genuine determination of liability. (*Gallentine* v. *Richardson* (1967) 248 Cal.App.2d 152, 156 [56 Cal.Rptr. 237].)

In applying that principle to the case before us we do not view the size of plaintiff Kim's recovery as evidence of a compromise; here, the $1,510.24 verdict, although relatively small, constituted the most that the jury could award plaintiff pursuant to the trial judge's instructions. Because ample evidence in the record supports the jury's initial conclusion as to the defendants' liability,[5] and because the jury awarded Kim the maximum amount permissible under the judge's erroneous instructions on damages,

---

[5]The strongest evidence presented by plaintiffs on the issue of liability concerned both the hospital's delay in isolating Robert Lipsitz and its failure to conform to a number of standard hygienic practices. Kim spent 14½ hours in the same nursery room with Robert following the time he should have been isolated under the requirements of title 17, section 2564, of the California Administrative Code. There was also substantial evidence that hospital personnel sometimes failed to wash their hands between the handling of infants, the diapers were not always sterilized before reuse, and that personnel occasionally carried two infants simultaneously. All of such practices fell below the prevailing standard of care. One expert witness for the plaintiffs testified that if proper standards are followed it is virtually impossible for salmonella infection to spread through a hospital nursery; this testimony alone could form the basis of a jury finding of liability under the doctrine of res ipsa loquitur. (*Tomei* v. *Henning* (1967) 67 Cal.2d 319, 322 [62 Cal.Rptr. 9, 431 P.2d 633].)

we hold that a limited new trial on the issue of damages alone should be ordered.[6]

In light of the uncontradicted evidence that Kim Capelouto endured repeated attacks of diarrhea, vomiting, dehydration, shock and cramps, that her treatment included intravenous feeding and the insertion of catheters into her stomach, we conclude that an instruction to the jury precluding an award of damages for pain and suffering was both erroneous and prejudicial, requiring the order of a limited new trial on the issue of damages.

The judgment as to plaintiff Kim Capelouto is reversed as to the issue of damages. In all other respects the judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[6]We note that at trial defendants did contend that most of Kim's symptoms arose from some undiagnosed illness rather than from salmonellosis. We need not evaluate that claim here since defendants may raise it on retrial, in contesting the plaintiffs' entitlement to specific damages.