[Civ. No. 42610. Second Dist., Div. Four. June 17, 1974.]

KATHLEEN POWERS, a Minor, etc., Plaintiff and Respondent;
KAREN POWERS, Plaintiff and Appellant, v.
WILLIAM M. SISSOEV, et al., Defendants, Cross-complainants and Respondents;
JACK EGLIN et al., Cross-defendants and Appellants.

KATHLEEN POWERS, a Minor, etc., Plaintiff and Respondent, v.
JACK EGLIN et al., Defendants and Appellants.

## COUNSEL

Bonelli & Brown and R. Edward Brown for Plaintiff and Appellant and for Plaintiff and Respondent.

Hillsinger & Costanzo and George R. Hillsinger for Cross-defendants and Appellants and for Defendants and Appellants.

Demler, Perona, Langer & Bergkvist, Demler, Perona, Langer, Bergkvist, Lauchengco & Lewine, Edison J. Demler and Carl M. Bergkvist for Defendants, Cross-complainants and Respondents.

## OPINION

**KINGSLEY, J.**—The instant appeals arise out of actions and cross-actions resulting from an injury suffered by plaintiff Kathleen Powers (Kathleen) and the medical treatment of Kathleen thereafter.[1]

On the afternoon of March 22, 1969, Kathleen, then five and one-half years old, darted into the street in front of an ice-cream truck, and was struck by another truck driven by defendant Sissoev. The child was taken by ambulance to defendant Wilmington Receiving Hospital, an emergency receiving center owned by defendant Dr. Eglin and in charge of defendant Dr. Citronbaum. The child was given treatment and sent home; thereafter she developed severe symptoms and was taken to another hospital and eventually to a third hospital where brain surgery was performed. The child is now permanently damaged, requiring constant care and feeding as well as assistance with all bodily functions.

Kathleen, through her mother as guardian ad litem, sued Sissoev[2] for the injury to herself; in a separate lawsuit she also sued the emergency hospital[3] and the two doctors for medical malpractice.[4] In the lawsuit

---

[1] The record requested by cross-defendants/appellants and filed in this court was both unnecessarily lengthy and inadequate. In view of the issues presented, only the proceedings in the trial court at the start of trial, prior to empanelment of the jury, and the portions of the reporter's transcript designated by Karen Powers were either necessary or useful. There was no need to include in the clerk's transcript the instructions given by the trial court, as to which no objection is here raised. On the other hand, examination by this court of the superior court files was necessary in order to discover most of the procedural details hereinafter set forth. We treat the record on appeal as augmented by that examination. (Rule 12(a), Cal. Rules of Court.)

[2] The action joined, as defendants, Sissoev's employer and several Does. A second cause of action was pleaded against the ice cream truck owners and its operator, apparently served as Does. The superior court file indicates that the claim against those defendants was settled by a compromise approved by the superior court; no issue as to that settlement is raised on the instant appeal.

The record indicates some confusion over the name and capacity of Sissoev's employer; sometimes "Speede Speedomotors," and sometimes defendant Martineau, is referred to as the employer of Sissoev. The nature of Sissoev's employment and the name and capacity of his employer are not material to this appeal. For the sake of simplicity, in the body of this opinion we refer to "Sissoev" or to "the driver" as applicable both to him and to his employer or employers.

[3] The record and superior court file indicate that the hospital was not a corporation but merely a fictitious name under which the doctors practiced; the action proceeded, the verdicts were returned and the new trial proceedings were conducted in the names of the two doctors as individuals; the notice of appeal is in the name of the two doctors and "Wilmington Medical Group." We do not attempt, in this opinion, to resolve any conflict arising from the variations in nomenclature. As with Sissoev and his employer or employers, we refer in the opinion to "the doctors" as including their business enterprise whatever its name and status.

[4] As we read the complaints, Karen did not seek damages as the parent of Kathleen.

first mentioned, Sissoev cross-complained against the emergency hospital and the doctors. Kathleen's mother, Karen, individually, joined in the first mentioned complaint, suing the ice cream truck and the other truck defendants on a claim for personal injury to herself allegedly arising out of the accident and, in the second complaint, sued for damages to herself resulting from the medical treatment given her daughter. The two actions were consolidated for trial.

The doctors had pled the statute of limitations as an affirmative defense to Karen's action against them. That issue was tried first and resulted in a determination by the court that the statutory bar existed. That ruling is not here contested.

At the opening of the trial, after the statute of limitations issue had been disposed of, the driver objected to testimony on the cause of action ("Third Cause of Action") pleaded against him by Karen. After argument, that objection was sustained. As hereinafter indicated, Karen's individual appeal seeks to reverse that ruling.

The trial proceeded on Kathleen's cause of action against the driver, on Kathleen's malpractice action against the doctors, and on the driver's cross-complaint against the doctors. The jury returned a verdict of $275,000 in favor of Kathleen and against the driver; it returned a verdict in favor of the doctors as against Kathleen in the malpractice action. Judgment on those verdicts was duly entered.

Kathleen and Karen each moved for a new trial, Kathleen against the doctors, and Karen against all defendants. As against the driver, Kathleen asked for an additur or, in the alternative, for a new trial on the issue of damages only. The driver moved for a new trial as against Kathleen and as against the doctors.[5] After a hearing, the trial court made a minute

---

The complaint seeks damages for Kathleen herself, for past and future medical costs. The prayer seems to seek damages on behalf of Karen only in connection with her individual action for damages resulting from shock.

[5]The driver's motion recites that it was ". . . to vacate and set aside the verdicts of the jury and any judgments entered thereon in favor of plaintiffs Kathleen Powers and cross defendants Wilmington Medical Group, Jack Eglin, M.D., and Ronald Citronbaum, M.D., and against these moving defendants and cross complainants, and to grant these moving defendants and cross complainants a new trial herein on all issues under the complaint of plaintiff Kathleen Powers and under their cross complaint." The record does not show that the jury ever returned any verdict on the cross-complaint or that any judgment on the cross-complaint was ever entered. In fact, the presence in the superior court file of an unexecuted verdict form relating to the cross-complaint, taken together with the absence of any minute entry on that subject, convinces us that no verdict was ever returned on that pleading. However, all the parties,

order as follows: "All motions for new trial are granted on the ground of insufficiency of the evidence except plaintiff Karen Powers motion for a new trial, which is denied."[6] This was supplemented within the statutory time (Code Civ. Proc, § 659) by a formal order and specification of grounds. In that order the court expressed its ruling in the following terms: "Motion for new trial is granted on all the issues on the ground of insufficiency of the evidence to justify the verdict and that the verdict is against the law." Karen has appealed from "the order of the trial court granting the defendants' motion to dismiss her Third Cause of Action and from the order of the court denying her motion for a new trial." The doctors have appealed from the order granting a new trial as to them. The driver, of course, has not appealed; and Kathleen has not appealed from the order granting a new trial to the driver.

## I.

■ As we have said above, 'the only appeal from the order granting a new trial is by the doctors. They contend only that the order granting a new trial does not meet the requirements of specificity set forth in section 657 of the Code of Civil Procedure, as that section has been construed in *Mercer* v. *Perez* (1968) 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and other cases. No contention is here made that the order, if it meets the requirements of specificity, is otherwise reversible. The statement of reasons for granting a new trial reads as follows as to the doctors: "Motion for new trial is granted on all the issues on the ground of insufficiency of the evidence to justify the verdict and that the verdict is against the law.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"On the other hand, there is ample evidence to find that defendants Citronbaum and Eglin were negligent in caring for the child. They did not take x-rays, a procedure most doctors who testified thought was called for, nor did they retain the child for proper observation during the critical period. Dr. Wilson was emphatic in his testimony that this amounted to negligence, as were most of the other experts."

and the trial court, regarded the motion for a new trial on the cross-complaint as proper and no one has here attacked the trial court's order. We note, without further discussion, the omission.

[6]The record does not indicate that the trial court ever ruled on Kathleen's motion. In view of the order granting the driver's motion for a complete new trial as between Kathleen and the driver, Kathleen's motion obviously became moot. Since' there is no appeal by Kathleen from the order granting a complete new trial, Kathleen's motion is equally moot here.

We see no advantage in discussing all of the cases which have applied the rule herein involved. In the case at bench, the sole issue for the jury was one that turned on expert testimony as to the standard of care expected of the doctors in the emergency hospital. The order clearly shows that the trial court accepted as controlling the expert testimony on behalf of Kathleen; it need go no further.

## II.

We have set forth above the language of Karen's notice of appeal. No appeal lies from an order denying a motion for a new trial (Code Civ. Proc., § 904.1; 6 Witkin, Cal. Procedure (2d ed. 1971) pt. I, Appeal § 71, pp. 4084-4085). The record shows that the attack on Karen's individual cause of action resulted in an order made August 1, 1972, that the driver's "objections to introduction of evidence on third cause of action in plaintiff's amended complaint in case number SOC 20-316, is sustained, on the ground that plaintiff does not state a cause of action." While that order would support a judgment against Karen and in favor of the driver, the record does not indicate that any such judgment had been entered at the time the appeal was filed. However, Karen's appeal has been briefed on the merits. To dismiss her appeal merely to have a judgment formally entered below with a new appeal would be a useless waste of judicial and litigant time. Accordingly, as was done in a comparable situation in *Zellers* v. *State of California* (1955) 132 Cal.App.2d 56 [281 P.2d 296], we order the trial court to enter, *nunc pro tunc* as of a date prior to September 22, 1972,[7] a judgment in favor of the driver and against Karen; we then treat Karen's notice of appeal now on file as a premature but effective appeal from that judgment. (Rule 2 (c), Cal. Rules of Court; 6 Witkin, Cal. Procedure (2d ed. 1971) pt. I, Appeal, 368, pp. 4340-4341.)

## III.

In considering Karen's appeal, we take note not only of the allegations in her complaint, and of the offer of proof made by her counsel in the trial court, but of the testimony introduced at the trial of the personal injury and malpractice actions on behalf of Kathleen. Since the attack on Karen's case was made at trial, and not by demurrer or by pretrial noticed motion, she was entitled to amend her complaint if, by so doing, she could state a cause of action. (*MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 816 [161 P.2d 449]; *Hayes* v. *Risk* (1967) 255 Cal.App.2d 613, 628 [64 Cal.Rptr. 36].) Our task on this appeal, therefore, is to

---

[7] I.e., prior to the date of Karen's new trial motion.

determine not solely whether Karen's complaint was sufficient in and of itself, but whether, as shown by the whole record, she has available evidence which, properly pleaded, would sustain a cause of action in her behalf for emotional distress and physical harm.

The case of Karen, as shown by the entire record, was as follows: She was not at home at the time of the accident and, thus, did not see or hear it; in the complaint she alleged Kathleen was injured at 3:30 p.m. and that she "witnessed" her daughter's injuries at 5 p.m.; she returned home after Kathleen had been taken by ambulance to defendant emergency hospital; she did not see her daughter until 30 to 60 minutes after the accident; she saw the onset of convulsions later that evening, and saw her daughter in the hospital for a substantial period before and after surgery; she has seen and tended Kathleen in her present condition; and she has suffered actual physical, as well as emotional, pain and distress as a result of the events witnessed by or known to her.

The issue before us starts, insofar as California is concerned, with the decision, in 1968, in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. That case, for the first time in California, allowed recovery to a parent for injury resulting from the emotional shock flowing from an accident to a child. In so holding, the court stated its position as follows: "We note, first, that we deal here with a case in which plaintiff suffered a shock which resulted in physical injury and we confine our ruling to that case. In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

"The evaluation of these factors will indicate the *degree* of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that

shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case.

"In light of these factors the court will determine, whether the accident and harm was *reasonably* foreseeable. Such reasonable foreseeability does not turn on whether the particular plaintiff as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected.

"In the instant case, the presence of all of the above factors indicates that plaintiff has alleged a sufficient prima facie case. Surely the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma. As Dean Prosser has stated: 'when a child is endangered, it is not beyond contemplation that its mother will be somewhere in the vicinity, and will suffer serious shock.' (Prosser, The Law of Torts, *supra,* at p. 353. See also 2 Harper & James, The Law of Torts, *supra,* at p. 1039.)

"We are not now called upon to decide whether, in the absence or reduced weight of some of the above factors, we would conclude that the accident and injury were not reasonably foreseeable and that therefore defendant owed no duty of due care to plaintiff. In future cases the courts will draw lines of demarcation upon facts more subtle than the compelling ones alleged in the complaint before us." (*Dillon* v. *Legg,* 68 Cal.2d 728, 740-741 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

The trial court, and the defendants here, rely on *Deboe* v. *Horn* (1971) 16 Cal.App.3d 221 [94 Cal.Rptr. 77]. But in *Deboe* there was neither pleading nor offer to plead any actual or specific physical injury. In *Jansen* v. *Children's Hospital Medical Center of the East Bay* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883], the mother relied only on the emotional distress resulting from observing a long-continued deterioration in her child while under the care of the defendant. Neither case is in point or controlling here.[8]

---

[8]Defendants cite a third decision by the Court of Appeal. However, the Supreme Court ordered the nonpublication of that opinion and it is not available as a precedent on this appeal. (Rule 977, Cal. Rules of Court.)

Karen relies on footnote 1 in *Capelouto* v. *Kaiser Foundation Hospital* (1972) 7 Cal.3d 889, 892 [103 Cal.Rptr. 856, 500 P.2d 880]. In that case a child had become seriously infected, at or shortly after birth, by reason of the alleged negligence of defendant hospital. The issue on appeal was whether the child, being of immature years, could recover for pain and suffering it had experienced as a result of the infection and its treatment; the court held that it could so recover. However, in approaching the issue before it, the court adverted to matters involved in the trial court proceedings. We quote the footnote passage in its entirety: "The complaint alleges a separate cause of action by Kim's parents for their own mental and physical distress arising from defendant's negligence. Pursuant to plaintiff's request, this issue went to the jury under the instruction that the parents recover 'reasonable compensation for any pain, discomfort, fears, anxiety, and emotional distress suffered by the parents, of which the injury to their child was a proximate cause.' The jury nonetheless found for defendants on this parents' cause of action.

"The parents assert that the trial court erred in not further instructing the jury that 'a person who, due to the negligence of a Defendant, is exposed to danger of injury to himself as well as a witness to injuries to his child may recover damages for any physical effects upon himself as well as for any mental or emotional distress which he may suffer.'

"The instruction which the jury was given allows for the parents' recovery for physical or mental injury sustained in the course of caring for the child and responding to her needs. The refused instruction would permit recovery on an additional ground: injuries caused to the parents by the mere *witnessing* of the child's suffering. The trial judge properly rejected this latter instruction, which was based upon our holding in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. *Dillon* makes clear that a parent may recover for witnessing a child's distress only if the parent suffers actual physical injury. (68 Cal.2d at p. 740.) The record in the present case, while demonstrating that Kim's parents suffered the emotional distress and mental anguish that is normal for parents of a seriously ill or injured child, does *not* reveal that the parents suffered the actual physical injury necessary for recovery under *Dillon*."

Although it is true, as the concluding paragraph in the extract above-quoted from *Dillon* shows, that the rule allowing recovery for emotional shock and its after effect is not necessarily limited to the narrow facts involved in that case, and although the footnote in *Capelouto* tangentially seems to indicate a right of recovery for physical harm flowing from

knowledge of an unobserved tort, we do not think that this court (especially in light of the strong dissents in *Dillon*) should extend the rule to a case such as this where the shock, as claimed, resulted from seeing the daughter 30 to 60 minutes after the accident and thereafter under circumstances not materially different from those undergone by every parent whose child has been injured in a nonobserved and antecedent accident.

The order granting new trials is affirmed. The trial court is directed to enter, *nunc pro tunc* as of a date prior to September 22, 1972, a judgment in favor of the driver and against Karen on Karen's amended complaint against the driver; that judgment is affirmed. In the appeal by the doctors from the order granting new trials, Kathleen and the driver shall recover their costs on appeal; in the appeal by Karen from the judgment adverse to her on her individual suit against the driver, neither party shall recover costs on appeal.

Jefferson, Acting P. J., and Dunn, J., concurred.