[Civ. No. 32592. First Dist., Div. Two. Feb. 25, 1975.]

DON HAIR et al., Plaintiffs and Appellants, v.
COUNTY OF MONTEREY et al., Defendants and Respondents.

**COUNSEL**

Jack Miller, Richard L. Katz, Robert A. Harlem and John Russell for Plaintiffs and Appellants.

Wines, Coffee & Robinson, Allan C. Anderson, Hoge, Fenton, Jones & Appel, Richard K. Harray and Lewis L. Fenton for Defendants and Respondents.

**OPINION**

**ROUSE, J.**—This is an appeal from a judgment of dismissal after an order sustaining demurrers without leave to amend. Plaintiffs Don and Betty Hair are the natural parents of Michael Hair, a minor nine years of age at the time of the filing of this action. The complaint alleges that as the result of oral surgery performed by the defendant physician, John Mead, in facilities of defendant County of Monterey's General Hospital, the child sustained permanent injuries including blindness, brain damage, quadraplegia and petit and grand mal seizures.

The original complaint was demurred to by defendant Mead and an amended complaint was filed, which was demurred to by both defendants. The amended complaint sought recovery on behalf of the parents for the extraordinary care and attention they would provide the child; the dimunition of the time, care and attention available for each other and their remaining children; emotional shock and injury to the parents' nervous systems sustained after witnessing the child's injuries; and for the lost society, companionship, comfort and society of their child.

Plaintiffs contend that they are entitled to recover for care and attention above and beyond that which would be normally expected of a parent but for the injuries received by the minor.

Insofar as such care and attention cause a pecuniary loss to the parents, and do not entail a double recovery, they are compensable elements of damage. The plaintiffs have attempted to establish that

*Bradford* v. *Edmands* (1963) 215 Cal.App.2d 159 [30 Cal.Rptr. 185], stands for the broader proposition that nonpecuniary damages for affection expended should be allowed. In that case, the cause of action was for the mother's services rendered to the injured minor. The court was concerned only with the value of the nursing care afforded to the child by his mother as a consequence of the child's injuries. The trial court had given the following instruction: " 'A parent is entitled to recovery for the reasonable value of the parent's care or attention which he, himself, or herself, may have rendered to his child as a result of the injuries received from an accident proximately caused by the negligence of another.' " (P. 165.) While this instruction would appear to support the plaintiffs' position herein, the appellate court rejected the contention that the mother was entitled to more than the value of nursing services. The court held that such an instruction was too broad and pointed out that care and attendance of a son is a maternal duty and that only the special care necessitated by the accident should be the subject of compensation (p. 168). In the instant case, it is apparent that plaintiffs have seized on the words "special care" to include extraordinary affection. However, as noted in *Bradford, supra,* special care contemplates only nursing, or other like services, provided by the parents.

Defendants point out that plaintiffs' minor son has previously recovered money damages for the reasonable value of all medical, nursing and related care required by him by reason of his injuries. Plaintiffs do not dispute this but argue that the extraordinary care and attention now demanded of them as parents of an utterly helpless child constitute an element of damage which is extremely personal to them and is not recoverable in the action brought on behalf of the child. We conclude that existing authority does not support their contention.

Plaintiffs further contend that they are entitled to recover for damage to their family unit caused by the substantial lessening of time, care and support which they are able to give each other and their other children. In support of their position, plaintiffs have cited the case of *Custodio* v. *Bauer* (1967) 251 Cal.App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884]. In that case, physicians were sued in a malpractice action for failure of a tubal ligation surgery for the purpose of sterilizing a wife. The operation failed to prevent a pregnancy. The court had overruled a dismissal by the lower court and in its discussion of the possible damages recoverable noted: "Where the mother survives without casualty there is still some loss. She must spread her society, comfort, care, protection and support over a larger group. If this change in the family status can be measured economically it should be as compensable as the former losses." (Pp.

323-324.) The recent decision of our California Supreme Court in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669], holds that an objection that such damages are difficult to measure economically is not a bar to stating a cause of action for their recovery. Thus, it appears that by applying the reasoning of the *Rodriguez* case, such allegation may be sufficient to state a cause of action. However, for reasons set forth elsewhere herein, we conclude that, in this instance, the judgment of dismissal must be affirmed.

■ Plaintiffs' second cause of action seeks damages for "great mental distress and injury to [plaintiffs'] nervous systems, worry and anxiety" caused by their witnessing the child's injuries. These allegations are insufficient since they fail to plead physical injury which must be alleged and proven in order to recover for damages sustained by parents who merely witness injury to their child. In *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], our Supreme Court allowed recovery by a parent witnessing injury to her child on the basis that such injuries were foreseeable. However, the court stated that "we deal here with a case in which plaintiff suffered a shock which resulted in *physical injury* and we confine our ruling to that case." (P. 740; italics added.)

The plaintiffs have alleged that they "suffer great mental distress and injury to their nervous systems, worry and anxiety . . . ." They assert that these allegations are sufficient to pass scrutiny under *Dillon, supra.* In support of this contention they have relied upon *Espinosa* v. *Beverly Hospital* (1952) 114 Cal.App.2d 232 [249 P.2d 843]. In that case the court held that definite nervous disturbances or disorders could be considered physical injuries. (P. 234.) In the instant case, there is no allegation of a definite nervous disturbance or disorder. The plaintiffs' allegation of "injury to their nervous systems," taken in context with the other elements of damage, indicates that they seek recovery for nervousness only, and not for damages having a physical component. Obviously, if physical injuries are claimed, they must be alleged with sufficient particularity so as to inform the adverse parties and the court of the physical dimensions of those injuries. Nor was it error for the court to refuse to allow the plaintiffs a third opportunity to plead an adequate case. Plaintiffs' counsel had admitted in correspondence to the court while the demurrers were under submission that "In the case at Bench, I do not believe that we would be able to prove 'actual physical injury' . . . ." In view of the fact that counsel conceded the absence of physical injury, which is the threshold element of recovery under the opinion rendered in *Dillon* v. *Legg, supra,* the court properly granted the

demurrers on this purported cause of action. A concession of a fact in a letter may be treated as an admission to control disposition of a case on appeal. (*Estate of Kretschmer* (1965) 232 Cal.App.2d 789 [43 Cal.Rptr. 121].)

Assuming, arguendo, that the plaintiffs had alleged the physical injuries necessary, recovery still could not have been had. In *Powers* v. *Sissoev* (1974) 39 Cal.App.3d 865 [114 Cal.Rptr. 868], the appellate court considered whether evidence adduced on behalf of a mother of a child who had been struck by a truck and treated in the hospital constituted a cause of action. The facts showed that the daughter had been injured at 3:30 in the afternoon and that the plaintiff mother did not see her daughter for 30 to 60 minutes after the accident. The child was treated and released and later developed convulsions witnessed by the mother and sustained permanent brain damage. The court held that "Although it is true . . . that the rule allowing recovery for emotional shock and its after effect is not necessarily limited to the narrow facts involved in that case, and although the footnote in *Capelouto* [*Capelouto* v. *Kaiser Foundation Hospital* (1972) 7 Cal.3d 889, 892, fn. 1 (103 Cal.Rptr. 856, 500 P.2d 880)] tangentially seems to indicate a right of recovery for physical harm flowing from knowledge of an unobserved tort, we do not think that this court (especially in light of the strong dissents in *Dillon*, [*supra*]) should extend the rule to a case such as this where the shock, as claimed, resulted from seeing the daughter 30 to 60 minutes after the accident and thereafter under circumstances not materially different from those undergone by every parent whose child has been injured in a nonobserved and antecedent accident." (Pp. 873-874.)

In this case, the facts alleged are that the mother was in the waiting room while the oral surgery was performed; that post-operatively the child was suffering from unknown injury which was described to the parents as temporary; and that two days thereafter the child developed the convulsions and blindness culminating in brain damage. This case is similar to *Powers*, in that the damages are claimed to flow from knowledge of an unobserved tort.

In *Jansen* v. *Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883], the appellate court considered whether a mother stated a cause of action for emotional trauma and physical injury sustained by that mother witnessing the progressive decline and ultimate death of her daughter in the hospital. In affirming the trial court's order of dismissal, the appellate court made clear that recovery for such injuries is dependent upon physical proximity to the scene of the tort and

that the tortious event be susceptible of understanding observance by the plaintiff. The court noted that *Dillon, supra,* "counsels moderation" in embarking upon this new area of tort law. We choose to heed that caution.

■ A more interesting proposition has been raised by the plaintiffs concerning whether or not they may recover for loss of the society and companionship of their child. Until the Supreme Court of this state announced its decision in the recent case of *Rodriguez* v. *Bethlehem Steel Corp., supra,* plaintiffs had failed to bring to the attention of this court any California case in support of its position. The *Rodriguez* decision was rendered after plaintiffs' appeal had already been filed and briefed. Plaintiffs contend that the case has some relevance here, in that it concerns the right of spouses to recover for the loss of consortium, including lost society, comfort, protection and companionship. Defendants concede the significance of *Rodriguez* in its application to this case when they state in their respective briefs that there is no meaningful distinction between a spouse's loss of comfort and society of another spouse and a parent's loss of comfort and society of a child. We find that much of the language of the case has applicability to the issues with which we are here concerned.

In *Rodriguez* v. *Bethlehem Steel Corp., supra,* our Supreme Court overruled prior precedents which denied a spouse recovery for loss of consortium where the mate survived injury, but was severely disabled and incapacitated by injuries sustained. The direct issue raised by that appeal and decided by the court was whether California should continue to adhere to the rule that a married person whose spouse has been injured by the negligence of a third party has no cause of action for loss of consortium, i.e., for loss of conjugal fellowship and sexual relations. The court concluded that the reasons for the rule have ceased and that California should join the large and growing majority of jurisdictions which now recognize such a cause of action. (P. 385.)

In *Rodriguez,* the court was first faced with the necessity of evaluating the *stare decisis* supporting the long standing California rule. The overwhelming weight of authority had supported the common law rule at the time the California rule was decided. However, this had radically shifted by the time of the *Rodriguez* opinion, a majority of jurisdictions recognizing the right of recovery.

Unlike the situation which preceded *Rodriguez, supra,* there has been no clear judicial or legislative rule articulated in California, which denies

a parent the right to recover for the loss of the society, protection and companionship of a child. However, an analysis of existing case law in this state indicates that, traditionally, such recovery has been disallowed. Those decisions discuss the parent's right of recovery strictly in terms of pecuniary loss. (See *Bradford* v. *Edmands, supra;* see also BAJI Nos. 14.30, 14.31 & 14.32.)

At least one jurisdiction has recognized that damages for loss of protection, comfort, society and companionship are recoverable by the parent of an injured child. In *Hayward* v. *Yost* (1952) 72 Idaho 415 [242 P.2d 971], the Idaho Supreme Court considered the case of parents suing on their own behalf for injuries sustained by them because of the injury of their child in an automobile accident. The court stated: "The parents may maintain an action for the injury of a minor child. . . . [I]n every such action damages may be given as under all the circumstances of the case may be just. . . . Elements which enter into the determination of such damages include contributions which the parents might reasonably have expected to receive from the earnings of such minor child until his majority, for which there is no precise measure, Richmond v. Moore, 103 Cal.App. 173, 284 P.2d 681, as well as the loss of protection, comfort, society and companionship. [Citation.]" (P. 977.)

Since the case expressly reserves judgment on the question of the applicability of its holding to the parent-child relationship, it is clear that *Rodriguez* is not a mandate to extend the class of plaintiffs to which a cause of action for lost comfort, protection, society and companionship is available. Our analysis of that case leads us to the conclusion that, logically, there is no objection to an extension of the rule laid down therein so as to permit recovery by parents for lost pleasure, society, comfort and companionship sustained by reason of injuries inflicted upon their child. However, the law is as much a creature of public policy as of logic. Logic serves the function of directing analysis while public policy prescribes the boundaries of decision making. Whereas this court may constitute a proper forum for dealing with the former, we feel that, in most situations, the latter is more properly left to determination by the Legislature or by a higher echelon of the judiciary. In this instance, however, we observe that no reasonable distinction can be drawn between the right of parents, in appropriate circumstances, to seek recovery for lost comfort, society and companionship of an injured and totally helpless child and the right of a spouse, in similar circumstances, to seek recovery for loss of consortium as authorized by *Rodriguez.*

Applying the reasoning of *Rodriguez,* it appears clear that the law also

favors the parent-child relationship sufficiently to permit a parent to recover for lost comfort, society and companionship and that this policy implies that such damages should be allowed in cases such as the one before this court.

Another area of concern put to rest by the court in *Rodriguez* was the fear of double recovery. There, the court dispelled any notion that the danger of double recovery was too great to permit the recognition of a spouse's right to an action for loss of consortium. The court pointed out that all that is necessary to avoid double recovery is to insure that each element of the damages is separate and distinct from all the others, and that the wife's recovery does not include any damages for loss of her husband's financial support or other items for which the husband is primarily entitled to be compensated. (P. 406.) The court also noted that procedures exist in California to insure that double recovery is not accomplished. In the instant case, it is quite clear that the injured child's rights to compensation are the child's rights to assert on its own behalf. Likewise, any injury suffered by the parents by reason of the loss of the society, companionship and comfort of their child is an injury peculiar to each parent in his own right. Further, any danger of double recovery implicit in such an action by a parent can be avoided by joinder. In *Rodriguez,* the court noted that, in recognizing that the right of consortium exists, six jurisdictions had held that the wife must join her cause of action with the husband's cause of action while five others, although encouraging joinder, held that it was not mandatory. "The latter position accords with the current California statutory scheme." (P. 407.) Applying these principles to the case before us, it is reasonable to assume that rules governing joinder will mitigate the risk of double recovery in most cases.

The final point dealt with by the California Supreme Court was whether or not the rule developed in the *Rodriguez* decision should apply retroactively or have prospective value only. In disposing of this point, the court held that for reasons of fairness and sound administration a spouse will not be permitted to initiate an action for loss of consortium—even though not barred by the statute of limitations—when the action of the other spouse for the negligent or intentional injury giving rise to such loss was concluded by settlement or judgment prior to the effective date of that decision. (P. 408.)

The need for such a rule is readily apparent. It would be manifestly unfair to require parties involved in such litigation to conduct two trials, each arising out of the same factual situation, where the issues are

sufficiently related so as to permit joinder upon motion by either party. For the same reason, it would be patently inefficient to encourage the trial of two or more lawsuits where one might suffice. In this day of overcrowded dockets and overworked courts, such procedure would surely be a step backward in the accomplishment of a sound judicial administration.

Accordingly, we conclude that the rule enunciated in *Rodriguez, supra,* governing the retroactive application of that judicial decision creating a right of action previously unrecognized in California, is dispositive of this case. We hold that parents may not maintain a cause of action for lost comfort, society and companionship of their child if the child's claim has proceeded to settlement or judgment before the effective date of the decision in the case of *Rodriguez* v. *Bethlehem Steel Corp., supra.* Of course, normal rules prohibiting the filing of claims after bar of the statute of limitations apply to any claims brought by the authority of that decision.

According to the record in the instant case, the parents' complaint was filed on September 20, 1970, in the Superior Court in San Francisco, after a timely claim against the County of Monterey on November 19, 1969, which was denied on December 2, 1969. Defendant Mead's demurrer was filed in San Francisco on December 15, 1971. A change of venue was then apparently obtained, although the record is silent as to that fact. On February 28, 1972, the parents' complaint was filed in Monterey County and on March 6, 1972, defendant Mead demurred to that complaint. On June 29, 1972, plaintiffs filed their first amended complaint, and in July 1972 defendants demurred thereto. A judgment of dismissal (following an order sustaining the demurrer without leave to amend) was entered on October 26, 1972. The case of the child had already gone to trial and a verdict returned in January 1971. That judgment has since become final.

Even though the record of the action brought on behalf of the child in this case is not before us, it appears from the above narrative of events that, other than the filing of their complaint in San Francisco, there was no action with regard to the parents' cause of action until after the child's action for the negligent injury which gave rise to such loss had been concluded. Thus, had *Rodriguez* then been the law in California, *one* complaint and *one* trial might well have sufficed for all purposes. In any

event, it is clear that both matters were initiated and the child's action long since concluded prior to the effective date of the *Rodriguez* decision.

The judgment is affirmed.

Taylor, P. J., concurred.

**KANE, J.**—I concur with the well-reasoned opinion authored by Justice Rouse. I have serious misgivings, however, about the efficacy of permissible joinder to prevent the double recovery problem. While it is, of course, true that the danger of double recovery *may be avoided* by joinder, this places the burden on the wrong party. Thus, henceforth in every case brought by an injured spouse or on behalf of an injured minor, a defendant will be burdened with the necessity of discovering whether a parent or spouse has filed—or intends to file—an independent action. In some counties where court calendars are current, it is not at all inconceivable that the primary case could be concluded prior to filing of the "consortium" case. Permissive joinder is of no assistance in avoiding the danger of double recovery in that situation.

To *prevent* the possibility of double recovery the burden should be placed on the party who has the power to prevent it—namely, the parent of the injured child or the noninjured spouse in the *Rodriguez* situation.

It would be a very simple matter for the Legislature to enact a provision requiring mandatory joinder of spousal and/or parental causes of action with the cause of action asserted by the injured child or spouse.

Such a requirement would impose no hardship on anyone, would promote efficient judicial administration, would be economically advantageous to the litigants, and would insure against the unwholesome risk of double recovery.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1975. Clark, J., did not participate therein.