Jesus Ramon Arriola **Sonoda**,
Plaintiff/Appellee,

**v.**

Maria Arriola **Villagomez**
and Carmen Arriola Pablo,
Defendants/Appellants.
Appeal No. 92-034
Civil Action No. 90-1035
September 15, 1993

---

Submitted on Briefs August 19, 1993

Counsel for appellants: James S. Brooks, Guam (Brooks & Brooks).

Counsel for appellee: Richard W. Pierce, Saipan.

BEFORE: VILLAGOMEZ, Justice, and KOSACK and MACK, Special Judges.

VILLAGOMEZ, Justice:

■ The appellants, Maria Arriola Villagomez ("Villagomez") and Carmen Arriola Pablo ("Pablo"), appeal the trial court decision that the appellee, Jesus Arriola Sonoda ("Sonoda"), has acquired a roadway easement across Villagomez and Pablo's land by both implication and prescription. Villagomez and Pablo seek reversal of the court's decision on two grounds. First, the creation of an easement by implication failed because such an easement, once established, may not be relocated and, in this case, Sonoda relocated an established easement. Second, because Sonoda, in a letter to Pablo, sought Sonoda's permission to maintain power poles on her land, Sonoda admitted having no roadway easement and such admission warrants summary reversal of the trial court decision.

We have jurisdiction over this matter pursuant to 1 CMC § 3102(a). We find no error in the decision of the trial court and we affirm.

## ISSUES AND STANDARD OF REVIEW

■ The appellants raise the following issues for our review:

1. Is Sonoda, the owner of Lot 1602, entitled to change the location of the access road to his lot [across] Lot 1879, which is owned by Villagomez and Pablo?
2. Once an easement of necessity is established, may it be unilaterally relocated by the owner of the dominant tenement?

3. Does the admission made by Sonoda in his letter to Villagomez and Pablo, which letter was admitted in evidence, warrant summary reversal of the judgment?

Appellants' Brief at 1. Each of the three issues raises a question of law which we review de novo. *See, e.g.*, *Deleon Guerrero v. Nabors*, 4 N.M.I. 31, 33 (1993).

## BACKGROUND

Miguel Lizama Arriola, grandfather of Villagomez and Pablo, was the original owner of adjoining Lots 1602 and 1879 prior to World War II. Today, Villagomez and Pablo own Lot 1879. Prior to the war, Miguel sold two hectares of Lot 1602 to Ana Arriola Benavente, Sonoda's mother. The land sold to Ana became landlocked in that it had no direct access to a public road. At that time, there was a road "which may have"[1] provided access from a public thoroughfare to Lot 1602 and which did not cross over Lot 1879. In its memorandum decision, the trial court noted that there was "no testimony or other evidence presented as [to] who used this other easement and for how long."[2] It further stated: "The Court viewed the general area in which this prior easement should have been but noted no present day indications of the existence of such an easement."[3]

After World War II, the U.S. military used the area for military housing and built and paved part of the present-day roadway. Numerous maps and aerial photographs admitted into evidence, including an official map of Saipan, depict the existence of the current road now in dispute. The trial court noted that a disinterested witness used this roadway to gain access to the area (Lot 1602) around 1967 or 1968. This road is in a different location from the road that allegedly existed prior to World War II.

Sonoda built his three-story house on Lot 1602 and had been using the current disputed roadway for access to his house until power poles and lines were installed along the roadway. Villagomez and Pablo objected to such installation. On April 26, 1990, Sonoda wrote to Pablo, in longhand, stating, in part:

We've been trying to get in touch with you but

haven't been succesful [sic]. C.U.C. had informed me that you had filed a complaint regarding the power pole in your property.

I apologize for the intrusion but I also ask for your kind consideration to please allow me to keep the power pole in your lot. I have approached other people in the area and they refused for one reason or another. My last resort was your lot and since we are closely related, I took the liberty of assuming that you would not mind, especially since having power into the area would be of benefit to all. If I am wrong in this assumption then please forgive me.

If you still insist that I remove the pole then what else can I do. All I ask is you give us a couple of weeks so I can search for ways to continue power connection to our house, especially since I have an ailing 85 year-old mother with us.

In December 1990, Villagomez and Pablo dumped coral on the road, thereby blocking it. The blocking of the road led to the filing of this action in the Superior Court. Shortly thereafter, that court ordered Villagomez and Pablo to remove the coral and to not block the road. After finding that Sonoda had acquired an easement by both implication and prescription, it permanently enjoined Villagomez and Pablo from further obstructing the roadway. Villagomez and Pablo appeal from the trial court's decision.

## DISCUSSION

■ Villagomez and Pablo argue that because the location of the easement was established before World War II, from the west boundary of Lot 1602 to a road running between Lots 1879 and 1880, Sonoda has no right to change the location of the easement without their consent. As a matter of law, this statement is generally correct. Once the location of an easement has clearly been established, the easement holder may not relocate such easement without either the consent of the owner of the servient estate, or by openly, continuously, and adversely using the newly-claimed easement area without interruption for a prescribed period.[4]

In the present case, as a matter of fact, the trial court did not find that an easement was established prior to World War II, or that Sonoda relocated such an ease-

---

[1] *See Sonoda v. Villagomez*, Civ. No. 90-1035 (N.M.I. Super. Ct. Sept. 9, 1992) (Memorandum Decision at 3).

[2] *Id.* at 5.

[3] *Id.* at 3.

---

[4] *See, e.g.*, RESTATEMENT OF PROPERTY [hereinafter PROPERTY] § 457 & cmt. a (1944) (easement by prescription).

ment. Rather, the trial court found that the present road is an easement under two separate rationales: easement by implication[5] and easement by prescription. Neither form of easement depends upon the status of the pre-World War II road. The present road did not come into existence as a result of Sonoda changing the pre-war easement to a new location. It came into existence when the U.S. military built new and different roadways after the war. Therefore, while the appellants correctly state the law, it has no application to the facts as found by the trial court.

Next, Villagomez and Pablo argue that in order for Sonoda to establish an easement by necessity,[6] he would have to show that there is "strict necessity." However, because Sonoda could re-establish the road that existed prior to World War II, there could be no "strict necessity" to maintain the present roadway. Again, as a matter of law, Villagomez and Sonoda are correct in stating that if the old roadway were identifiable and could be re-established, that would be the preferred remedy. However, there is no evidence in the record regarding the current location of such a road, the current condition or ownership of the lands through which it passed, and whether or not it could be re-opened. Therefore, the facts are insufficient to support their legal argument. Furthermore, the trial court found that Sonoda acquired an easement not only by implication but also by prescription. And, where an easement is established by prescription, "strict necessity" is irrelevant.[7]

The third and final argument that Villagomez and Pablo raise is that because Sonoda admitted in his letter to Pablo that he could not maintain the power poles on Pablo's land without her consent, such admission "readily supports a conclusion that Sonoda realized he was not entitled to the easement he claimed," citing *Hair v. County of Monterey*, 119 Cal. Rptr. 639 (Ct. App. 1975). However, *Hair* is not on point. In that case, the plaintiff's *counsel* wrote to the *court* and stated in part: "In the case at Bench, I do not believe that we would be able to prove actual physical injury." *Id.*, 119

Cal. Rptr. at 642. No such admission has been made to the court by Sonoda in this case. Additionally, the statement is irrelevant to whether or not there was an easement established for the purpose of Sonoda's access to a public thoroughfare. While the owner of an easement may maintain and repair that easement,[8] the extent of an easement is fixed upon its creation. "Every easement is a particular easement privileging the owner thereof to make *particular use* of a servient tenement . . . and the process which creates an easement necessarily fixes its extent."[9] That Sonoda wrote for permission to maintain power poles on the easement is irrelevant to the existence of the roadway easement. Therefore, we find no error in the trial court's interpretation and disposition of the letter in evidence.

## CONCLUSION

Based on the foregoing, we find no error in the trial court decision, and the decision is hereby **AFFIRMED**.

---

[5] "[T]he dominant and servient tenements were at one time owned by the same person, who conveyed a portion of Lot 1602 to plaintiff's predecessor in interest. Under such circumstances, an easement by implication arises." *Sonoda, supra* note 1, memorandum decision at 4.

[6] Easement by "necessity" as used here is synonymous with easement by "implication"; the terms are interchangeable.

[7] An easement by prescription is created where "for the period of prescription . . . the use is . . . adverse, and . . . continuous and uninterrupted." PROPERTY, *supra* note 4, § 457.

[8] *See id.* §§ 480-82, 485.

[9] *Id.* § 482 cmt. a (emphasis added); *see also id.* § 478 cmt. a.